621 So.2d 780 (1993)
STATE
v.
Leonard PEART.
Nos. 92-KA-0907, 92-KD-1039.
Supreme Court of Louisiana.
July 2, 1993.
Revised Dissenting Opinion July 6, 1993.
Rehearing Denied September 2, 1993.
*782 Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jack Pebbles, Barbara B. Rutledge, Asst. Dist. Attys., David A. Dalia, L.J. Hymel, Jack Yelverton, for applicant.
Richard C. Teissier, Dwight M. Doskey, John Holdridge, Donald A. Hyatt, for respondent.
Jane L. Johnson, Charles D. Weisselberg, Michael J. Brennan, Dennis E. Curtis, for Nat. Legal Aid Defense, amicus curiae.
Kenneth P. Rodenbeck, for Public Defender 9th Judicial Court, amicus curiae.
*783 Samuel S. Dalton, for Public Defender 24th Judicial Court, amicus curiae.
David W. Price, Kathryn M. Flynn, for Public Defender 19th Judicial Court, amicus curiae.
James E. Boren, David L. Lewis, for Nat. Ass'n Crim. Defense Lawyer, amicus curiae.
Marx G. Paul, for Public Defender 15th Judicial Court, amicus curiae.
Harry Simms Hardin, III, for Louisiana State Bar Ass'n, amicus curiae.
Louis G. Gruntz, Jr., Debra G. Miller, for Jefferson Parish, amicus curiae.
Ellis P. Adams, Jr., for Louisiana Dist. Attys. Ass'n, amicus curiae.
Revised Dissenting Opinion by Justice Dennis July 6, 1993.
CALOGERO, Chief Justice.[*]
In this case we assess a multifaceted ruling made by the trial judge in Section E of Orleans Parish Criminal District Court. Based on his examination of the defense services being provided to indigent defendants in that section of court, the trial judge ruled that LSA-R.S. 15:145, 15:146 and 15:304, as well as "the system for securing and compensating qualified counsel" as a whole are "unconstitutional as applied in the City of New Orleans." He also specifically ordered that the legislature provide funding for improved indigent defense services and ordered a reduction in the case loads of those attorneys representing indigent defendants in his court. Because we find that the statutes are not unconstitutional and that the remedies ordered are inappropriate at this time, we reverse the trial court's rulings.
We nonetheless also find, based on the record developed in the trial court, that the services being provided to indigent defendants in Section E of Orleans Criminal District Court do not in all cases meet constitutionally mandated standards for effective assistance of counsel. Because we find that the provision of indigent defense services in Section E is in many respects so lacking that defendants who must depend on it are not likely to receive the reasonably effective assistance of counsel the constitution guarantees, we remand this case to the trial court and instruct the judge of Section E of Criminal District Court, when hearing Leonard Peart's case and others in which similar claims are asserted by indigent defendants pre-trial, to hold individual hearings for each defendant and apply a rebuttable presumption that indigents are not receiving assistance of counsel sufficiently effective to meet constitutionally required standards. If the trial judge, applying this presumption and weighing all evidence presented, finds that Leonard Peart or any other defendant in Section E is not likely receiving reasonably effective assistance of counsel, then he shall not permit the trial of such cases to be conducted.

Introduction
Louisiana Const. art. 1 sec. 13 guarantees a number of rights to persons accused of a crime. One of those "Rights of the Accused" is the right to assistance of counsel "at each stage of the proceedings." If the accused is indigent and is charged with an offense punishable by imprisonment, he is entitled to assistance of counsel appointed by the court. Such counsel must be reasonably effective. State v. Stripling, 354 So.2d 1297, 1305 (La.1978); see Strickland v. Washington, 466 U.S. 668, 697-89, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984). In addition, art. 1 sec. 13 requires that the legislature "shall provide for a uniform system for securing and compensating qualified counsel for indigents."
The legislature has enacted LSA-R.S. 15:144 et seq. These statutes establish Louisiana's indigent defender system. LSA-R.S. 15:144 creates Indigent Defender Boards ("IDBs") to oversee indigent defense operations in each judicial district. LSA-R.S. 15:145 delineates the powers and duties of the IDBs. LSA-R.S. 15:146 sets up a mechanism for local funding of individual districts' indigent defender systems. *784 LSA-R.S. 15:304 is a general statute which requires all parishes and the city of New Orleans to pay "[a]ll expenses ... whatever attending criminal proceedings...."[1]

Facts
Leonard Peart was charged with armed robbery, aggravated rape, aggravated burglary, attempted armed robbery, and first degree murder.[2] He is indigent.
In New Orleans, the Indigent Defender Board ("IDB") has created the Orleans Indigent Defender Program ("OIDP"). OIDP operates under a public defender model. The trial court appointed Rick Teissier, one of the two OIDP attorneys assigned to Section E, to defend Peart against all the above charges except first degree murder.
In response to Teissier's "Motion for Relief to Provide Constitutionally Mandated Protection and Resources," the trial court held a series of hearings on the defense services being provided Peart and other defendants in Section E of Criminal District Court. At the hearings, the court found the following facts. At the time of his appointment, Teissier was handling 70 active felony cases. His clients are routinely incarcerated 30 to 70 days before he meets with them. In the period between January 1 and August 1, 1991, Teissier represented 418 defendants. Of these, he entered 130 guilty pleas at arraignment. He had at least one serious case[3] set for trial for every trial date during that period. OIDP has only enough funds to hire three investigators. They are responsible for rendering assistance in more than 7,000 cases per year in the ten sections of Criminal District Court, plus cases in Juvenile Court, Traffic Court, and Magistrates' Court. In a routine case Teissier receives no investigative support at all. There are no funds for expert witnesses. OIDP's library is inadequate.
The court found that Teissier was not able to provide his clients with reasonably effective assistance of counsel because of the conditions affecting his work, primarily the large number of cases assigned to him. The court further ruled that "the system of securing and compensating qualified counsel for indigents" in LSAR.S. 15:145, 15:146 and 15:304 was "unconstitutional as applied in the City of New Orleans" because it does not provide adequate funding for indigent defense and because it places the burden of funding indigent defense on the city of New Orleans. The trial judge ordered short and long term relief. In the short term, he ordered Teissier's case load *785 reduced; ordered the legislature to provide funding for an improved library and for an investigator for Teissier; and announced his intention to appoint members of the bar to represent indigents in his court. For the long term, he ordered that the legislature provide funds to OIDP to pay additional attorneys, secretaries, paralegals, law clerks, investigators, and expert witnesses.
The State appealed Judge Johnson's ruling of unconstitutionality directly to this Court under La. Const. art. 5 sec. 5(D), the constitutional provision which vests appellate jurisdiction in this Court in cases in which a lower court has declared a statute unconstitutional. The State also applied to this Court for "all needful writs" to address the question of the appropriateness of the relief the trial judge ordered. After we granted the State's writ application (No. 92-KD-1039) consolidated it with the State's appeal (No. 92-KA-0907), and heard oral argument in the two cases, Peart himself was tried in Section E and acquitted of the armed robbery. In a second trial, in which he was represented by other counsel, he was acquitted on the murder charge. He is awaiting trial on the aggravated rape charge. Teissier again represents him.[4]

Law
This appeal raises five main questions which we answer in turn. First, is La. Const. art. 1 sec. 13's command to the legislature (to "provide for a uniform system for securing and compensating qualified counsel for indigents") enforceable by an individual criminal defendanti.e. does an individual defendant have a personal right in this regard? Second, do LSA-R.S. 15:304, 15:145 and 15:146 unconstitutionally burden the state's political subdivisions by requiring that they fund the indigent defender system? Third, may a court address, before trial, a defendant's claim that he is receiving ineffective assistance of counsel? Fourth, may a trial court consolidate motions filed on behalf of multiple defendants charged with unrelated crimes, when they are represented by a single attorney and allege that they are receiving ineffective assistance of counsel? Finally, are indigent defendants in Section E of Orleans Criminal District Court being provided the effective assistance of counsel the constitution requires?

I.
First, is La. Const. art. 1 sec. 13's command to the legislature (to "provide for a uniform system for securing and compensating qualified counsel for indigents") enforceable by an individual criminal defendanti.e. does an individual defendant have a personal right in this regard?
Article 1, sec. 13 is entitled "Rights of the Accused."[5] Its main focusindeed its exclusive focus for its first three sentencesis on what rights "any person" or "an accused" has, when he has been "arrested or detained in connection with the investigation or commission of any offense." These provisions unarguably bestow *786 rights on individuals accused of a crime.
The section's fourth and final sentence, however, is contextually and qualitatively distinct from those which precede it. In that sentence, the focus shifts from an accused and his rights to the legislature and its obligations. That sentence reads: "The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents."
First, as the transcripts of the 1973 constitutional convention reveal, this sentence was added to sec. 13 as a floor amendment. The provision was intended, in the words of its author, "not ... to suppress or supplant" the section, but rather to "supplement" it. Verbatim Transcripts, Vol. XIV, 43rd Day, Sept. 7, 1973, 39-40. Second, as noted above, the subject of this last sentence is "the legislature." The sentence does not continue the list of the rights of a defendant, but rather simply "mandates" the legislature do something to protect the enumerated rights. Id. See State v. Hunter, 340 So.2d 226, 234 (La.1976) (when reasonably effective counsel is furnished, defendant's rights under La. Const. art. 1 sec. 13 are not violated).
On the basis of the language of art. 1 sec. 13, the comments of the constitution's authors, and the jurisprudence, we find that this fourth sentence of art. 1 sec. 13 creates no personal right which individual defendants may exercise. Even if the legislature fails to respond to the constitutional command, individual defendants can not force legislative action on the basis of the last sentence of art. 1 sec. 13.
Nonetheless, those accused of a crime are of course entitled to the effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Ross, 410 So.2d 1388, 1390 (La.1982). Likewise, indigent defendants facing incarceration are entitled to have effective counsel appointed. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); State v. Madison, 345 So.2d 485 (La.1977). However, the provision of a "uniform system for securing and compensating qualified counsel" is not a right which the individual defendant is entitled to enforce, although the existence of this provision in the constitution may well bolster this Court's existing constitutional, supervisory and inherent authority to ensure that indigent defendants receive the effective assistance of counsel the constitution guarantees them.

II.
Do LSA-R.S. 15:304, 15:145 and 15:146 unconstitutionally burden the state's political subdivisions by requiring that they fund the indigent defender system?
The Louisiana Constitution embodies the principle of plenary legislative power. "[T]he Louisiana legislature has all powers which have not been denied it by the state constitution." In re American Waste and Pollution Control, 588 So.2d 367, 373 (La.1991). The constitution empowers the legislature to impose obligations on political subdivisions, except where specific provisions of the constitution limit legislative authority. New Orleans v. State, 426 So.2d 1318 (La.1983); Hainkel v. Henry, 313 So.2d 577 (La.1975).
Although La. Const. art. 6 sec. 14(A) contains specific limitations on the State's power to require political subdivisions to cover expenditures the State has mandated, these limitations do not apply to "a law enacted and effective prior to the adoption of the amendment of this Section by the electors of the state in 1991." La. Const. art. 6 sec. 14(B)(3). Because the IDB funding provisions were all in effect before 1991, art. 6 sec. 14(A) does not apply to them. According to the constitution's principle of plenary legislative power, in the absence of a constitutional provision requiring it to do so, the legislature is not itself compelled to fund the indigent defender system for which it must "provide."
Article 1 sec. 13 by its terms does not order the legislature to fund the system, but merely to "provide for a uniform system." This Court has already decided *787 that the statutory structure which allows local IDBs to employ public defender, contract attorney, or assigned counsel models at their choosing meets the standards for uniformity set out in art. 1 sec. 13. State v. Bryant, 324 So.2d 389 (La.1975). This is so, as we reasoned in Bryant, because that requirement of uniformity relates to the need for all indigent defendants throughout the state to be provided with the reasonably effective assistance of counsel the constitution requires. The requirement of uniformity does not apply to the administrative structures the legislature may allow local authorities to choose as they assist in providing for indigent defense.
We find that LSA-R.S. 15:304, 15:145 and 15:146 do not unconstitutionally burden the state's political subdivisions by requiring that they fund the indigent defender system. While the district court might question the political wisdom of this means of funding, the statutes themselves are not unconstitutional.

III.
May a court address before trial a defendant's claim that he is receiving ineffective assistance of counsel?
Ineffective assistance of counsel claims are generally raised in applications for post conviction relief. See, e.g., State v. Truitt, 500 So.2d 355, 359 (La.1987). This Court has more often than not declined to consider ineffective assistance of counsel claims on appeal because the record in such cases is usually insufficient to assess such a claim. Id.; State v. Barnes, 365 So.2d 1282, 1285 (La.1978). Examining ineffective assistance of counsel claims after a conviction has been affirmed on appeal "enables the district judge in a proper case to order a full evidentiary hearing." State v. Barnes, supra, at 1285.
However, this general practice of deferring ineffective assistance of counsel claims to post-conviction proceedings is not without exception. When "the record discloses evidence needed to decide the issue," an appellate court may decide it. State v. Ratcliff, 416 So.2d 528, 530 (La.1982). For example, ineffective assistance of counsel claims based on allegations that the attorney is faced with a conflict of interest are routinely brought to the attention of the trial court and considered before trial. See, e.g., State v. McNeal, 594 So.2d 876 (La.1992) (indigent defender's motion to withdraw from representation on ground of conflict of interest granted). Likewise, Louisiana courts consider before trial claims that defense counsel are incompetent and for that reason unable to provide reasonably effective representation. See, e.g., State v. Wilson, 608 So.2d 151 (La. 1992) (issue of appointed counsel's competence exhaustively litigated before trial). The underlying rationale in all the above situations is the same: the judge considering the claim must have sufficient evidence before him to make a determination.
If the trial court has sufficient information before trial, the judge can most efficiently inquire into any inadequacy and attempt to remedy it. Thus, treating ineffective assistance claims before trial where possible will further the interests of judicial economy. State v. Ratcliff, supra. It will also protect defendants' constitutional rights, and preserve the integrity of the trial process. It matters not that the ineffective assistance rendered may or may not affect the outcome of the trial to the defendant's detriment. See Luckey v. Harris, 860 F.2d 1012, 1017 (11th Cir.1988), cert. denied, 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990) (constitutional provisions securing assistance of counsel for defendants protect process rights "that do not affect the outcome of a trial"); Rodger Citron, Note, (Un)Luckey v. Miller: The Case for a Structural Injunction to Improve Indigent Defense Services, 101 Yale L.J. 481, 493-94 (1991) ("the right to counsel is more than just the right to an outcome").
If the judge has an adequate record before him and a defendant has claimed that he is receiving ineffective assistance of counsel before trial, the judge may rule on the ineffective assistance of counsel claim at that time.

*788 IV.
May a trial court consolidate motions filed on behalf of multiple defendants charged with unrelated crimes, when the defendants are represented by a single attorney and allege that they are receiving ineffective assistance of counsel?
We begin with the proposition that because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must necessarily be individualized and fact-driven. See Strickland v. Washington, supra, 466 U.S. at 697-89, 104 S.Ct. at 2064-65 ("specific guidelines not appropriate" in assessing defendants' ineffectiveness of counsel claims). See also Lincecum v. Collins, 958 F.2d 1271 (5th Cir. 1992) (range of attorney conduct that constitutes reasonably effective assistance of counsel "is extremely wide and highly dependent on the necessities of a given case"). In different contexts, Louisiana courts have found a wide variety of attorneys' failings to constitute ineffective assistance.[6] These courts, in evaluating the ineffective assistance claim, have undertaken a detailed examination of the specific facts and circumstances of the case. This is necessary precisely because effectiveness of counsel cannot be defined in a vacuum, but rather requires an individual, fact-specific inquiry. Strickland, supra.
The trial judge's decision to consolidate the motions was no doubt prompted by his desire to have a better understanding of the effect Teissier's work load had on the defense being provided indigent defendants, including Peart, in Section E. The hearings held on the consolidated motions created a substantial body of evidence invaluable in assessing the claims. However, the true inquiry is whether an individual defendant has been provided with reasonably effective assistance, and no general finding by the trial court regarding a given lawyer's handling of other cases, or workload generally, can answer that very specific question as to an individual defendant and the defense being furnished him.
We find that a determination of effectiveness of counsel requires that the trial court examine each case individually. Each defendant who raises a serious question regarding the effectiveness of his representation is entitled to a ruling. The trial judge who conducts the pre-trial hearing may consolidate proceedings and take some general evidence, but he must make a particularized finding about and issue an independent judgment regarding each defendant.

V.
Are indigent defendants in Section E of Orleans Criminal District Court provided with the effective assistance of counsel the constitution requires?
Although we find that a trial judge reviewing a defendant's pre-trial claim that he is receiving ineffective assistance of counsel must undertake an individualized inquiry and issue an independent judgment regarding each defendant, this Court, in order adequately to review the record and judgment now before us, must make some global findings about the state of indigent defense in Section E of Orleans Criminal District Court.
We preface our discussion by noting that the language of La. Const. art. 1 sec. 13 is unequivocal: "At each stage of the proceedings, every person is entitled to the assistance of counsel ... appointed by the court if he is indigent and charged with a crime punishable by imprisonment." That assistance must be reasonably effective. State v. Stripling, supra. Article 1 sec. 13 also provides that "[t]he legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents." *789 As noted above, the legislature has enacted statutes responsive to these constitutional requirements. State v. Bryant, supra.
However, we cannot say that the system these statutes have put in place invariablyor, in Section E, even regularlyaffords indigent defendants reasonably effective assistance of counsel. We take reasonably effective assistance of counsel to mean that the lawyer not only possesses adequate skill and knowledge, but also that he has the time and resources to apply his skill and knowledge to the task of defending each of his individual clients.
Briefs of amici[7] and the Spangenberg Report commissioned by the Supreme Court Judicial Council's Statewide IDB Committee[8] discuss at length the systemic inadequacies in the Louisiana indigent defender system. Specifically, the system has resulted in wide variations in levels of funding, both between different IDB's and within the same IDB over time. The general pattern has been one of chronic underfunding of indigent defense programs in most areas of the state. Study of the Indigent Defender System in Louisiana, supra, at 16-18; 25. The system is so underfunded that there is a "desperate need to double the budget for indigent defense in Louisiana in the next two years." Id. at 50. The unique system which funds indigent defense through criminal violation assessments, mostly traffic tickets, "is an unstable and unpredictable approach."[9]Id. The underfunding which results from this system has serious consequences. The situation which prevails in Section E, as the record before us shows, is one of them.
The conditions in Section E should be contrasted with the American Bar Association Standards for Criminal Justice (1991). These conditions routinely violate the standards on workload (Std. 4-1.3(e)) ("[d]efense counsel should not carry a workload that, by reason of its excessive size, interferes with the rendering of quality representation"); initial provision of counsel (Std. 5-6.1) ([c]ounsel should be provided to the accused ... at appearance before a committing magistrate, or when criminal charges are filed, whichever occurs earliest"); investigation (Std. 4-4.1) ("[d]efense counsel should conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case"); and others. Id. We know from experience that no attorney can prepare for one felony trial per day, especially if he has little or no investigative, paralegal, or clerical assistance. As the trial judge put it, "[n]ot even a lawyer with an S on his chest could effectively handle this docket." We agree. Many indigent defendants in Section E are provided with counsel who can perform only pro forma, especially at early stages of the proceedings. They are often subsequently provided with counsel who are so overburdened as to be effectively unqualified.
*790 In light of the unchallenged evidence in the record,[10] we find that because of the excessive caseloads and the insufficient support with which their attorneys must work, indigent defendants in Section E are generally not provided with the effective assistance of counsel the constitution requires.

Remedies
Having found that indigent defendants in Section E cannot all be receiving effective assistance of counsel, we must decide what remedy this Court should impose.
Louisiana is not the only state to have faced a crisis in its indigent defense system. Over the last decade, numerous states have addressed problems like those Louisiana faces. In some states, legislatures have on their own initiative improved provision of indigent defense services. For example, in 1989 alone the legislatures of New Mexico, Missouri and Kentucky provided for large increases in the budgets of their statewide public defender offices; the Tennessee and Georgia legislatures established new statewide public defender offices. Edward C. Monihan, Attorneys Must Be Paid Fairly, Crim.Just., Summer 1990, at 43-44. In other states, litigation challenging the adequacy of defense services has resulted in systemic changes. See, e.g., Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770 (1991); State v. Lynch, 796 P.2d 1150 (Okla.1990); In re Order on Prosecution of Criminal Appeals, 561 So.2d 1130 (Fla.1990); State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816 (1987); State v. Robinson, 123 N.H. 665, 465 A.2d 1214 (1983).
We have before us numerous recommendations for reform of Louisiana's IDB system. The Spangenberg Report recommends, inter alia, that a statewide indigent defender board be created to plan, oversee, and coordinate the delivery of indigent defense services throughout the state; that this Board appoint a Chief Public Defender to carry out the policies of the Board; and that alternative funding sources be found which would double the amount spent on indigent defense in the state within two years. The Spangenberg Report recommends that a major portion of the additional funding come from the state's general fund. The Judicial Council's Statewide IDB Committee has approved the recommendations of the Spangenberg Report. Attorney Teissier simply endorses the trial court's order to the legislature "to expend sufficient funds to protect the constitutional rights" of indigent defendants. Various amici curiae have also submitted recommendations for action by this Court. The 24th JDC IDB, for example, recommended that this Court mandate that the criminal violation assessment be raised compulsorily to $25 in every parish; that the funds raised be used statewide; that this court appoint a special master to oversee use of these funds; and that this special master reduce public defenders' caseloads. Academic commentators have recommended to federal courts that they issue structural injunctions to reform failing indigent defense systems and require state legislatures to raise money to bring the system into compliance with constitutional requirements. See, e.g., Citron, cited page 787. Each of these solutions has much to commend it. The recommendations of the Spangenberg Report are especially attractive because they offer the prospect of a coherent response tailored to the state's needs.
By virtue of this Court's constitutional position as "the final arbiter of the meaning of the state constitution and laws," St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 822 (La.1992) (Dennis, J., concurring), we have a duty to interpret and apply the constitution. See La. Const. art. 5 sec. 1. In addition, the constitution endows this Court with "general supervisory jurisdiction over all other courts. La. Const. art. 5 sec. 5. This Court also possesses inherent powers "to do all things reasonably necessary for the exercise of [its] functions...." Konrad v. Jefferson *791 Parish Council, 520 So.2d 393, 397 (La. 1988). This inherent authority includes the authority "to fashion a remedy which will promote the orderly and expeditious administration of justice." State v. Mims, 329 So.2d 686, 688 (La.1976).
Acting pursuant to the established sources of authority noted above, and having found that evidence in the record before us shows that the provision of indigent defense services in Section E of Orleans Criminal District Court is in many respects so lacking that defendants who must depend on it are not likely to be receiving the reasonably effective assistance of counsel the constitution guarantees, we find that a rebuttable presumption arises that indigents in Section E are receiving assistance of counsel not sufficiently effective to meet constitutionally required standards. See State v. Smith, 140 Ariz. 355, 681 P.2d 1374 (1984).[11] This presumption is to apply prospectively only; it is to apply to those defendants who were represented by attorney Teissier when he filed the original "Motion for Relief" who have not yet gone to trial;[12] and it will be applicable to all indigent defendants in Section E who have OIDP attorneys appointed to represent them hereafter, so long as there are no changes in the workload and other conditions under which OIDP assigned defense counsel provide legal services in Section E. If legislative action is not forthcoming and indigent defense reform does not take place, this Court, in the exercise of its constitutional and inherent power and supervisory jurisdiction, may find it necessary to employ the more intrusive and specific measures it has thus far avoided to ensure that indigent defendants receive reasonably effective assistance of counsel. Cf. Arnold v. Kemp, supra; State v. Lynch, supra; In re Order on Prosecution of Criminal Appeals, supra; State ex rel. Stephan v. Smith, supra; State v. Robinson, supra. We decline at this time to undertake these more intrusive and specific measures because this Court should not lightly tread in the affairs of other branches of government and because the legislature ought to assess such measures in the first instance.
We remand this case to the district court for retrial of the motion filed on behalf of Peart and for trial of other Section E indigent defendants' motions in which they hereafter assert claims of ineffective assistance of counsel pre-trial. We instruct the judge of Section E, when trying Leonard Peart's motion and any others which may be filed, to hold individual hearings for each such moving defendant and, in the absence of significant improvement in the provision of indigent defense services to defendants in Section E, to apply a rebuttable presumption that such indigents are not receiving assistance of counsel effective enough to meet constitutionally required standards. If the court, applying this presumption and weighing all evidence presented, finds that Leonard Peart or any other defendant in Section E is not receiving the reasonably effective assistance of *792 counsel the constitution requires, and the court finds itself unable to order any other relief which would remedy the situation, then the court shall not permit the prosecution to go forward until the defendant is provided with reasonably effective assistance of counsel.

Decree
The judgment of the district court, which declared LSA-R.S. 15:145, 15:146 and 15:304 unconstitutional and ordered the legislature to allocate funds for additional staff, is reversed. The case is remanded to the district court for retrial of the motion offered on behalf of Peart and for trial of such other Section E defendants' motions as may be asserted anew in the district court.
REVERSED AND REMANDED.
COLE, J., concurs in all aspects of the majority opinion, except that part ordering the trial judge to apply a rebuttable presumption of ineffective assistance of counsel, from which I respectfully dissent.
LEMMON, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, Justice, dissenting.
The Legislature has not fulfilled its constitutional charge to provide a uniform system for compensating qualified attorneys to defend indigent persons charged with felonies. The Legislature's relegating all indigent defender programs in the state to operate almost exclusively on funds raised from criminal violation assessments has resulted not only in a generally underfunded system, but also (and more significantly) in widely disparate, non-uniform and totally inadequate funding (and resultingly inadequate legal services) in those judicial districts with high felony rates and proportionately low collections on traffic violations.[1]
The Legislature should be required to enact supplemental funding, within a specified reasonable time, for compensating indigent defender attorneys according to uniform standards and guidelines so that at least minimally adequate programs will operate in all of the various judicial districts.
DENNIS, Justice, dissenting.
I respectfully dissent.
Although the majority seems to agree in principle with the trial court that the state indigent defense system as applied in Orleans Criminal District Court is unconstitutional, my colleagues attempt to narrowly confine the effects of their decision to Section E of that court. Yet the conditions that affect indigent services in Orleans Parish obviously are not limited to Section E. To deny this is as whimsical as saying that a person in early term is "only a little bit pregnant." On the other hand, the majority, without articulating constitutional principles or legal assistance guidelines, sweepingly creates a presumption that indigent defense services in Section E are ineffective and invites the trial judge to halt trials until the presumption has been overcome by the state. Evidently, my colleagues intend to offer up Section E as a lamb for burnt offering, hoping that an all-knowing, benevolent deity will miraculously cure the ills of the indigent defense system in that section and perhaps elsewhere. I respectfully decline to join the majority's decision because it does not realistically and thoroughly address or attempt to remedy the systemic constitutional deficiencies affecting the provision of indigent defense services in Orleans and perhaps other parishes.
The state indigent defense system is clearly unconstitutional as applied in Orleans *793 Parish Criminal District Court. The Supreme Court of Louisiana has a duty to make this declaration and to clearly state the principles, standards and reasons that require this decision. The Legislature and the Executive branch of Louisiana have a duty to correct the constitutional deficiencies in the system. However, without a clear explanation by this court of the controlling constitutional principles and standards, the legislature cannot know exactly what is required to bring the indigent defender system into constitutional alignment; and it is unlikely that the legislature will be inspired or impelled to take satisfactory action without adequate guidance from this court. Furthermore, this court must clearly articulate the rationale for its decision in order to guide the lawyers and judges who are obliged to assess the application and operation of the indigent defense system in other parishes and call for any necessary corrections there. Finally, it may be necessary for this court to fashion judicial remedies to afford immediate protection for the rights of persons in criminal judicial proceedings and to encourage and assist the legislature in the enactment of corrective legislation. In doing so, this court should proceed cautiously, giving the lower courts clear standards to guide and channel their discretion in the implementation of this court's decision.
The majority opinion does not contain many of the ingredients that should be included in the major constitutional decision required by the present case. First, it does not state clearly and correctly the principles upon which the declaration that the system is unconstitutional in application must be based: (1) Peart as an accused has standing to challenge the constitutionality of the state indigent defense system's application and operation in criminal proceedings against him as it may adversely affect his rights to counsel and other constitutional rights. (2) The scope and grounds of Peart's challenge are based not merely on the last sentence of Article I, § 13 of the state constitution but also upon the state and federal constitutional guarantees of right to counsel, due process, and equal protection. (3) Peart's challenge, in essence, seeks prospective declaratory and injunctive relief to remedy systemic constitutional deficiencies in the provision of indigent defense services. (4) Therefore, Peart's burdens of evidentiary production and persuasion are the same as required for such relief in a civil case, viz., a showing that there is a likelihood of substantial and immediate irreparable injury, and that the remedies at law are inadequate; by the same token, the post-conviction relief standard is not applicable in this pre-conviction proceeding. Second, the majority opinion does not develop specific, fact-based standards for determining whether the indigent defense system fails to meet constitutional muster in its particular applications and operations. Third, in a proper case, this court should channel and guide the trial courts' implementation of its decision by instructing them to follow the principles and standards clearly articulated in this court's opinion as described above; the majority was unable to perform this essential function because it failed to set forth the principles and standards that justify declaring the indigent defense system unconstitutional as applied. Fourth, in a proper case, this court should proceed cautiously and gradually in creating judicial remedies for the purpose of urging corrective legislation. A clear explanation of the reasons for the court's declaration of unconstitutionality itself may prompt legislative action. Properly crafted and funded remedial legislation will require time and study. In designing judicial remedies this court should take into consideration other rights and interests, such as defendants' rights to a speedy trial and the public's interest in the prompt administration of criminal justice. In this regard, the majority may have acted hastily and in disregard of these interests by authorizing the trial court at this time to stay criminal trials in its section as a judicial remedy for the constitutional violation.
Standing. The majority fell into error in its threshold determination that Peart, as a person accused of a crime, lacks standing or a personal right to challenge constitutionally the application and operation of the *794 statutory system for delivery of indigent legal defense services. Standing is a broad concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court. As a general rule, in criminal proceedings, the accused may challenge the validity of a statute, practice, or policy that adversely affects or threatens to adversely affect his rights. State v. McMahon, 391 So.2d 1120 (La.1980); State v. Brown, 389 So.2d 48 (La.1980); E.g., Groppi v. Wisconsin, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971); Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317 (1945); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). It is sufficient that there is a realistic danger of sustaining a direct injury as a result of the operation or enforcement of the statute. Id.; Babbit v. United Farm Workers National Union, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). In the present case, Peart alleged and proved that he is in danger of sustaining real and immediate injury to his right to counsel and other rights resulting from the challenged unconstitutional operation of the indigent defense system. Accordingly, Peart clearly has standing to contest the constitutionality of the system's application in his case. Indeed, the state has not raised the issue of standing, and it is difficult to see who has a personal right to bring the constitutional challenges if the criminal accused does not.
Scope of Constitutional Rights Asserted. The majority's confusion as to whether Peart has standing may stem from its underestimation of the scope and nature of the constitutional rights asserted. Contrary to the majority's understanding, the constitutional rights asserted by Peart are not limited to the last sentence of Article I, § 13 of the 1974 Louisiana Constitution. The third sentence of Article I, § 13 and the Sixth Amendment of the United States Constitution guarantee to every indigent, when charged with an offense punishable by imprisonment, reasonably effective assistance of counsel, appointed by the court, at each stage of the adverse judicial criminal proceedings. State v. Messiah, 538 So.2d 175 (La.1989); State v. Rowe, 416 So.2d 87 (La.1982); State v. Ross, 410 So.2d 1388 (La.1982); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Culyer v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In order to render reasonably effective assistance, a lawyer must be reasonably qualified, compensated, aided and equipped. Furthermore, his workload must be reasonable so as to allow effective representation of each client's cause. It is self-evident that each of these ingredients is necessary if an attorney is to effectively confer and consult with the accused, prepare his defense, and act for him in the criminal proceedings. Consequently, the right to counsel guarantees of our constitutions clearly imply and require that these essential elements be provided when the court appoints an attorney to assist an indigent reasonably effectively in adverse judicial criminal proceedings. The final sentence of Article I, § 13 of our state constitution, which provides that "[t]he legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents[,]" is thus not the principal source of the right to counsel guarantees or the exclusive determinant of their meaning or content. This mandate to the legislature primarily recognizes the non-delegable duty of that branch of our state government to provide for and fully implement the delivery of reasonably effective assistance of counsel to indigents. Further, it requires that the legislature do so through a "uniform system", thus giving general guidance as to how the indigent services shall be organized and administered.
Nature of the Relief Sought. Certain elements of the present case are analogous to the civil action in Luckey v. Harris, 860 F.2d 1012 (11th Cir.1988) for prospective injunctive relief on behalf of indigent accused against the state of Georgia to remedy constitutional deficiencies in the provision of indigent defense services. In Luckey the plaintiff alleged that deficiencies *795 similar to those proven to exist in the Orleans Parish Criminal District Court denied indigent defendants their Sixth Amendment right to counsel and other constitutional rights. The district court had dismissed the action because plaintiff's allegations could not meet the "across-the-board future inevitability of ineffective assistance of counsel" standard as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court of appeals reversed, holding that, in order to obtain prospective injunctive relief to compel the state to furnish indigent accused with adequate legal representation, as contrasted with post-conviction criminal relief, a criminal accused should not be required to allege and prove facts meeting the Strickland v. Washington standard, but only the likelihood of substantial and immediate irreparable injury, and the inadequacies of remedies at law. Luckey v. Harris, 860 F.2d at 1017 (citing O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). See also, United States v. W.T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Prospective relief designed to avoid future harm can protect constitutional rights, even if the violation of those rights would not affect the outcome of a trial. Id. (citing Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)); Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928). Accordingly, there is no good reason that the same principles of law should not govern the present case.
Formulation of Standards and Remedies. The evidence in the present case clearly shows that by any prudent standard the legislature has failed to establish a system that consistently provides funds necessary for adequate indigent defense services in the Orleans Parish Criminal District Court. A declaratory judgment alone, however, will not provide the legislative and executive branches with the comprehensive guidance in addressing the various deficiencies needed to bring the system into compliance with the constitutions. This court should establish standards by setting limits on the number of cases handled by indigent defense attorneys, by requiring a minimum number of investigators to be assigned to each defender, and by requiring specified support resources for each attorney. If a defendant demonstrates future error due to funding and resource deficiencies, the courts should be instructed to view the harm as state-imposed error, which would require reversal of the conviction unless the state demonstrates that the error was harmless. See R. Citron, (Un)Luckey v. Miller: The Case for a Structural Injunction to Improve Indigent Services, 101 Yale L.J. 481, 501 (1991).
In State v. Smith, 140 Ariz. 355, 681 P.2d 1374 (1984), the Arizona Supreme Court found that a county's bid system failed to consider such factors in awarding criminal defense contracts. Holding that this failure created an inference that the system produced inadequate representation, the court required the county to follow a series of guidelines in order to maintain a contract defense system. The county's failure to comply would result in the automatic reversal of any conviction obtained under the system and appealed by the defendant, unless the state could demonstrate that the error was harmless. The decision prompted the county to begin paying appointed counsel on an hourly basis, increasing the county's expenditure on defense services and improving the quality of representation. See Citron, supra at 502; C. Pilch, Note, State v. Smith: Placing A Limit On Lawyers' Caseloads, 27 Ariz. L.Rev. 759, 767-68 (1985).
The majority has created a Smith -type presumption but has failed to set forth any standards to give the legislative and executive branches guidance in bringing the system into constitutional compliance. Furthermore, the majority has adopted a per se rule that would allow the trial court to prevent criminal trials in Section E until the defense counsel system is in compliance with the constitution. In my opinion, the per se rule may be too drastic at this time. Utilizing the Smith-type harmless error standard alone would be appropriate and would ensure that the criminal justice system continues to operate while the state attempts to comply with the constitutional *796 requirements. Moreover, any remedy created by this court would be more effective if it were coupled with clear standards formulated by this court to inform the trial court and the other branches of government of the systemic changes that must be made in order to provide reasonably effective indigent legal assistance. If the political branches default on their responsibility, this court could issue a more detailed order to instruct those branches on how to bring the indigent defense system into compliance with the constitution.
NOTES
[*] Cole, J., was assigned to participate in the decision of this case, which was argued before he retired.
[1] LSA-R.S. 15:144 creates Indigent Defender Boards ("IDBs") to oversee indigent defense operations in each judicial district. Board members are selected by the district court judges from nominees provided by the bar association within the district. LSA-R.S. 15:145 delineates the powers and duties of the IDBs. It directs each IDB to determine how indigent defense services will be provided in the district. The boards choose between public defender, contract attorney, and assigned counsel models, or may use a combination of these models. LSA-R.S. 15:146 sets up a mechanism for local funding of individual districts' indigent defender systems. This provision, unique in the United States, creates a system whereby almost all of the funds for indigent defense come from criminal violation assessments. The statute directs almost all of Louisiana's courts of original criminal jurisdiction to remit to a judicial district indigent defender fund an amount ranging from $17.50 to $25.00 for each violation. Parking violations are excepted. Except for limited support to some attorneys in some districts as provided by LSA-R.S. 15:571.11 (creating a special "Criminal Court Fund" to be used on motion of the district attorney with approval of the district judge), funding for indigent defense comes only from these criminal violation assessments, principally traffic tickets. Other provisions relate to indigency determination proceedings (LSA-R.S. 15:147), partial reimbursement by indigents (LSA-R.S. 15:148), and appointment of counsel at parole hearings (LSA-R.S. 15:149). LSA-R.S. 15:304, is a general statute which directs parishes to pay for the administration of the criminal justice system and sets up procedures for accounting for expenses.
[2] Peart has subsequently been charged with battery of a police officer, simple escape, and simple battery. These latter charges arise out of his conduct during his incarceration.
[3] According to the trial court, a serious case is one involving an offense necessarily punishable by a jail term which may not be suspended. These offenses include first degree murder, second degree murder, aggravated rape, aggravated kidnapping, armed robbery, and possession of heroin.
[4] Ironically, the trial court judgment indicates that at the time of the judgment Peart himself was receiving the effective assistance of counsel guaranteed him by the constitution. As the trial judge wrote, "[e]ach of Mr. Teissier's clients is entitled to the same kind of defense Leonard Peart is receiving."

That Peart himself could receive effective assistance, while Teissier's other clients do not, reflects the fact that indigent defenders must select certain clients to whom they give more attention than they give to others. When the indigent defenders are able to apply their full efforts, they do generally provide effective assistance of counsel. Peart's appears to be such a case. We therefore anticipate, although we do not decide, that the State may well be able to rebut the presumption of ineffectiveness in the pending rape case against Peart.
[5] The section in its entirety reads:

When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with a crime punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.
[6] Examples include State ex rel. Busby v. Butler, 538 So.2d 164 (La.1988) (attorney who did not introduce available mitigating evidence, did not make an opening statement, and did not contest elements of State's case delivered ineffective assistance of counsel); State v. Rubin, 559 So.2d 550 (La.App. 2d Cir.1990) (attorney who did not object to erroneous jury instruction delivered ineffective assistance); State v. Hunter, 614 So.2d 332 (La.App. 4th Cir.1993) (attorney who did not bring important evidence contained in police report to the attention of the jury delivered ineffective assistance).
[7] The following organizations and individuals filed amicus curiae briefs: The National Legal Aid and Defender Association, the Public Defender of the 9th JDC, Public Defender of the 24th JDC, the Public Defender of the 19th JDC, The National Association of Criminal Defense Lawyers, the Public Defender of the 15th JDC, the Louisiana State Bar Association, Jefferson Parish, and the Louisiana District Attorneys Association.
[8] In December of 1990, this Court appointed a seventeen-member Statewide IDB Committee of the state's Judicial Council and asked that it study and recommend changes to Louisiana's indigent defense system. The Committee met throughout 1991, and heard testimony in Shreveport, Baton Rouge, and New Orleans. The Committee also retained the Spangenberg Group, a nationally known firm expert in indigent defense systems, to prepare a report on the state of indigent defense in Louisiana. In March of 1992, the Spangenberg Group delivered its report to the Statewide IDB Committee. The Committee and the full Judicial Council analyzed the report and made recommendations in part based upon the Spangenberg Group's recommendations.
[9] Examples of the approach's unpredictability abound. One particularly stark example: when the city of East Baton Rouge ran out of pre-printed traffic tickets in the first half of 1990, the indigent defender program's sole source of income was suspended while more tickets were being printed. Study of the Indigent Defender System in Louisiana, supra, at 25.
[10] At oral argument, counsel for the state specifically did not controvert the findings made at the trial court as to the number of cases Teissier handles and the conditions under which he works.
[11] In Smith, the Arizona Supreme Court considered the adequacy of the system used in Mohave County, Arizona to appoint counsel for indigent defendants. The Court found that the system violated defendants' federal constitutional rights. "The court held further that for trials commenced after the issuance of its ruling, if the same procedure for selection and compensation of counsel [were] followed, there [would] be an inference that the procedure resulted in ineffective assistance of counsel and the burden of rebutting such inference [would] be on the state." Caroline A. Pilch, Note, State v. Smith: Placing a Limit on Lawyers' Caseloads, 27 Ariz. L.Rev. 759 (1985).

Following the Smith decision, Mohave County reformed its indigent defense system. The reforms resulted in increased expenditures for indigent defense and an improvement in the quality of representation in the county. Id.; Citron, supra, at 502.
[12] Insofar as our findings about the ineffective assistance of counsel in Section E relate to general conditions and not to the assistance provided to any specific defendant, we do not decide that any one of Teissier's clients tried and convicted in the time between the filing of the "Motion for Relief" and the issuance of this opinion was denied the effective assistance of counsel. Teissier's clients who have been tried and convicted in the interim will only have the traditional opportunity to assert that they have received constitutionally deficient assistance of counsel, i.e. on appeal or in post-conviction proceedings.
[1] This legislative deficiency in La.Rev.Stat. 15:146 is not cured by La.Rev.Stat. 15:304, the general statute (enacted long before the mandate in the 1974 Constitution) which requires parishes to pay for the administration of criminal proceedings, because the non-uniformity of funding under Section 146 only impacts the parishes with less proportionate revenues from violation assessments. Uniformity perhaps can be accomplished by the state's supplementing the existing violation assessments, according to promulgated standards and guidelines, in those districts in which the assessments do not reach the level necessary for a minimally adequate program.