STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0125

JOSEPH ALLEN, STEVEN AYRES, ASHLEY HURLBURT, RORY KEVIN
GATES, JAMES HOWARD, DEMARCUS MORROW, RODNEY WALLER,
KEITH ARCEMENT, FREDERICK BELL, GENARO CRUZ GOMEZ, SAM
YBARRA, MICHAEL CARTER, & JAMES PARK, ON BEHALF OF
THEMSELVES & ALL OTHERS SIMILARLY SITUATED

VERSUS

JOHN BEL EDWARDS IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
THE STATE OF LOUISIANA, ZITA JACKSON ANDRUS, CHRIS L.
BOWMAN, FLOZELL DANIELS, JR., THOMAS D. DAVENPORT, JR.,
PATRICK J. FANNING, W. ROSS FOOTE, KATHERINE E. GILMER,
MICHAEL C. GINART, JR., FRANK HOLTHAUS, DONALD W. NORTH, &
MOSES JUNIOR WILLIAMS, IN THEIR OFFICIAL CAPACITIES AS
MEMBERS OF THE LOUISIANA PUBLIC DEFENDER BOARD, & JAMES T.
DIXON, JR., IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE
PUBLIC DEFENDER

Judgment Rendered: **MAR 1 2 2021**

* * * * * *

On appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
No. 655,079

The Honorable Todd W. Hernandez, Judge Presiding

* * * * * *

Thomas P. Owen, Jr.
Kathryn W. Munson
John P. D'Avello
Metairie, Louisiana

Counsel for Appellants
John Bel Edwards in his
Official Capacity as Governor of the
State of Louisiana, Zita Jackson
Andrus, Chris L. Bowman, Flozell
Daniels, Jr., Thomas D. Davenport, Jr.,
Patrick J. Fanning, W. Ross Foote,
Katherine E. Gilmer, Michael C.
Ginart, Jr., Frank Holthaus, Donald W.
North, & Moses Junior Williams, in
their Official Capacities as Members
of the Louisiana Public Defender
Board; and James T. Dixon, Jr., in his

Whipple, C.J. Concurs
for reasons assigned by
Guidry, J. dissents and assigns reasons by
Theriot, J., Concurs and
assigns reasons by

Official Capacity as the Louisiana
State Public Defender

Mark A. Cunningham
New Orleans, Louisiana
 -and-
Jon Greenbaum
*Pro Hac Vice*
Washington, District of Columbia

Counsel for Appellees
Joseph Allen, Steven Ayres,
Ashley Hurlburt, Rory Kevin
Gates, James Howard,
Demarcus Morrow, Rodney
Waller, Keith Arcement,
Frederick Bell, Genaro Cruz
Gomez, Sam Ybarra, Michael
Carter, & James Park, on
Behalf of Themselves and All
Others Similarly Situated

Chloe M. Chetta
New Orleans, Louisiana

Counsel for Amici Curiae
American Conservative Union
Foundation Nolan Center for Justice,
CATO Institute, Freedomworks
Foundation, The James Madison
Institute, R Street Institute, Innocence
Project New Orleans, The Innocence
Project, National Legal Aid &
Defender Association, and Public
Defender Service for the District of
Columbia

\* \* \* \* \* \*

**BEFORE: WHIPPLE, C.J., GUIDRY, THERIOT,
CHUTZ, AND WOLFE, JJ.**

**WOLFE, J.**

This is an appeal by John Bel Edwards, in his official capacity as Governor of the State of Louisiana, Zita Jackson Andrus, Chris L. Bowman, Flozell Daniels, Jr., Thomas D. Davenport, Jr., Patrick J. Fanning, W. Ross Foote, Katherine E. Gilmer, Michael C. Ginart, Jr., Frank Holthaus, Donald W. North, and Moses Junior Williams, in their official capacities as appointed members of the Louisiana Public Defender Board, and James T. Dixon, Jr., as the Louisiana State Public Defender (collectively, "defendants"), seeking review of a district court judgment granting a motion for class certification filed by plaintiffs, Steven Ayres, Keith Arcement, Frederick Bell, Michael Carter, and James Park (collectively, "plaintiffs"). For the following reasons, we reverse the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

On February 6, 2017, plaintiffs instituted this action with the filing of a Verified Petition for Class Certification and for Declaratory and Injunctive Relief ("Petition") against defendants. The Petition named as plaintiffs thirteen individuals who purport to represent a class of persons similarly situated, *i.e.*, those "charged with non-capital offenses in Louisiana, and have had counsel appointed to represent them because they cannot afford the services of an attorney." Plaintiffs subsequently filed a First Amended Petition for Class Certification and for Declaratory and Injunctive Relief ("Amended Petition") on September 19, 2017, removing six of the thirteen originally named plaintiffs.[1]

On behalf of the putative class, plaintiffs complain in their Amended Petition that the public defense system in Louisiana fails to provide effective representation to the poor and that indigent defendants will be denied the right to counsel until and

---

[1] Additionally, prior to the hearing on class certification, two plaintiffs withdrew their declarations and intention to serve as a class representative. Therefore, only five of the originally named plaintiffs remain in the action and class representatives: Steven Ayers, Keith Arcement, Frederick Bell, Michael Carter, and James Park.

3

unless the structural limitations of the public defender system are removed. According to plaintiffs, these structural limitations include, "acute lack of resources, endemic conflicts of interest, lack of independence, unreasonably high workloads, and lack of supervision, [all of which] create an impenetrable barrier to effective representation." Elaborating on these alleged "structural issues," plaintiffs argue:

> Each of them is indigent and facing charges which could, in most cases, lead to their imprisonment for years or decades. Each has had an attorney appointed to represent them in court, but the representation they are receiving fails to meet minimum constitutional or professional ethical standards by any measure. Many never had a confidential meeting with their attorneys. Some have met their attorneys only in passing. None of the attorneys have spoken with their clients in a meaningful way about their defenses or the strength of the case against their client, identified and secured favorable witnesses and evidence, filed appropriate pretrial motions, or provided a voice for their clients in court. Many of them have been deprived of even basic information about the charges against them or the expectations for trial. Their experiences are not unique and the product of the structural barriers to effective representation in Louisiana.

Moreover, plaintiffs contend, "Louisiana does not have a public defense system that is effective statewide; that the traditional markers of effective representation, such as meaningful adversarial testing of the prosecution's case, timely and confidential consultation with clients, and appropriate case investigation, are either absent from public defender services or significantly compromised; and that judicial intervention is needed to remove the structural barriers to the right to counsel. Without this court's intervention, [p]laintiffs will continue to face and suffer irreparable injury and prejudice."

Generally, plaintiffs assert a Section 1983[2] claim for injunctive and declaratory relief for violations of the rights to effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution; a Section

---

[2] Pursuant to 42 U.S.C.A. §1983, claims may be brought against any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

4

1983 claim for injunctive and declaratory relief for violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and a claim for injunctive and declaratory relief for violations of their rights to due process and counsel under Louisiana Constitution Article I, §§ 2, 3, and 13.[3] Specifically, plaintiffs contend and pray for:

> An injunction prohibiting [d]efendants from failing to: (1) provide effective representation for the poor when they are facing charges with criminal offenses punishable by imprisonment, including, without limitation, meaningful adversarial testing of the charges, the pressing of necessary motions, timely and confidential consultation with clients, and appropriate case investigation; (2) remove the structural barriers to effective representation in Louisiana including, without limitation, lack of resources, unreasonably high attorney workloads, conflicts of interest, lack of supervision, lack of independence, and critical understaffing; and (3) enforce mandatory statewide standards and guidelines that require public defender services to be provided in a manner that is uniformly fair and consistent throughout the state;

> An order of appointment for a monitor to supervise compliance with the injunctions and orders of this [c]ourt until such time as the [c]ourt determines that [d]efendants have: (1) implemented a state-wide public defense system that will continue to provide effective representation for the poor when they are charged with criminal offenses punishable by imprisonment; (2) removed the structural barriers to effective representation including, without limitation, lack of resources, unreasonably high attorney workloads, conflicts of interest, lack of supervision, lack of independence, and critical understaffing; and (3) implemented and enforce mandatory statewide standards and guidelines that require public defender services to be provided in a manner that is uniformly fair and consistent throughout the [s]tate;

> A declaration that (1) the traditional markers of effective representation, such as meaningful adversarial testing of the charges, the pressing of necessary motions, timely and confidential consultation

---

[3] La. Const. Art. I, § 2 provides, "[n]o person shall be deprived of life, liberty, or property, except by due process of law."

La. Const. Art. I, § 3 provides, in pertinent part, that, "[n]o person shall be denied the equal protection of the laws."

La. Const. Art. I, § 13 provides, "[w]hen any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents."

with clients, and appropriate case investigation, are either absent from the delivery of public defender services in Louisiana or significantly compromised on a system wide basis; (2) judicial intervention is needed to remove the structural barriers to effective representation in Louisiana including, without limitation, lack of resources, unreasonably high attorney workloads, conflicts of interest, lack of supervision, lack of independence, and critical understaffing.

In response to plaintiffs' Petition, defendants filed declinatory and peremptory exceptions asserting the objections of lack of subject matter jurisdiction, no cause of action, and no right of action. Defendants further answered the Petition asserting various affirmative defenses, including the defense of qualified immunity under Section 1983.[4] These exceptions were overruled by the district court with defendants subsequently seeking this court's review of the ruling; however, this court denied defendants' application for supervisory review. **Allen v. Edwards**, 2017-1581 (La. App. 1st Cir. 2/6/18) (unpublished writ action).

Following plaintiffs' Amended Petition, defendants again raised and reasserted the objections of lack of subject matter jurisdiction, no cause of action, and no right of action, which were substantively similar to defendants' prior exceptions. Furthermore, defendants filed a motion for partial summary judgment, contending there were no material issues of fact that plaintiffs are not entitled to injunctive relief, they have no liability for violations of the Sixth or Fourteenth Amendments of the United States Constitution, have no liability for violations of the Louisiana Constitution, and are otherwise entitled to statutory immunity.[5] The

---

[4] In **Harlow v. Fitzgerald**, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the United States Supreme Court articulated a new objective standard with regard to the qualified immunity defense, stating that government officials performing discretionary functions generally are shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.

[5] Defendants' exceptions and defenses were based on several arguments: (1) Article I, § 13 of the Louisiana Constitution places all power and authority to create and regulate an indigent defender system on the legislature and, due to separation of powers, neither the executive branch nor the judicial branch may intervene; (2) because the Louisiana Supreme Court held in **State v. Peart**, 621 So.2d 780 (La. 1993), that the final sentence of La. Const. Article I, §13, stating that "[t]he legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents," does not create a private right to force legislative action, the plaintiffs cannot have a right of action against the executive branch defendants; (3) defendants have no duty to provide indigent defendants with representation which satisfies "best practices" or "traditional markers of

6

district court denied defendants' exceptions and motion for partial summary judgment on January 16, 2019. Defendants filed an application for supervisory review, which application was denied by this court in a separate, unpublished writ action. See **Allen v. Edwards**, 2019-0436 (La. App. 1st Cir. ___/___/___) [same date as opinion herein] (unpublished writ action).

Meanwhile, on May 4, 2017, plaintiffs filed their Motion to Certify a Class Action. Thereafter, discovery was conducted, and the district court held the class certification hearing on June 12, 2018. Evidence was introduced at the hearing, including deposition testimony transcripts of various plaintiffs, an expert in public defense and the provisions thereof, numerous public defenders, and the current and former State Public Defenders, as well as the annual reports and studies of the Board, among other documentary evidence. After a lengthy hearing, the district court took the matter under advisement and the parties submitted proposed findings of fact and conclusions of law.

The district court issued its ruling on plaintiffs' Motion to Certify a Class Action on August 17, 2018, issuing supplemental written findings of fact and reasons for judgment on October 11, 2018. In the separate judgment dated October 11, 2018, the district court granted plaintiffs' Amended Petition and certified the class, which is defined as "all persons who are indigent and facing criminal charges punishable by a term of imprisonment brought by the State of Louisiana, excluding individuals charged with a capital offense, proceeding pro se, or represented by private counsel and juveniles whose cases are assigned to Juvenile Courts." Defendants now appeal the judgment of the district court granting class certification.[6]

---

effective representation;" (4) claims of ineffective assistance of counsel must be raised post-trial; therefore, plaintiffs' pre-trial claims are not in the proper procedural posture per **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and (5) La. R.S. 13:4062 and La. Code Civ. P. art. 3601 divest the courts of jurisdiction to issue an injunction involving the expenditure of state funds which ultimately results in a deficit to the respective state agency.

[6] An appeal may be taken as a matter of right from an order or judgment granting or denying certification of a class. See La. Code Civ. P. art. 592(A)(3)(c).

# DISCUSSION

In their sole assignment of error, defendants contend the district court erred in certifying the class without conducting a rigorous analysis of the requirements set forth in Louisiana Code of Civil Procedure article 591. Additionally, defendants argue plaintiffs failed to meet their burden of proof as to each of the factors set forth in La. Code Civ. P. art. 591(A) and the requirements of La. Code Civ. P. art. 591(B) and (C).

## PRINCIPLES OF CLASS ACTION CERTIFICATION

It has been well-established that a class action is a nontraditional litigation procedure that permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court. The purpose and intent of the class action procedure is to adjudicate and obtain *res judicata* effect on all common issues applicable not only to persons who bring the action, but also to all others "similarly situated." **Dupree v. Lafayette Ins. Co.**, 2009-2602 (La. 11/30/10), 51 So.3d 673, 679, *citing,* **Brooks v. Union Pacific R. Co.**, 2008-2035 (La. 5/22/09), 13 So.3d 546, 554.

The class action is an exception to the rule that litigation be conducted by and on behalf of the individual named parties only. Thus, the determination of whether a class action meets the requirements imposed by law requires a "rigorous analysis." Such an analysis requires the district court to "evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness." In so doing, the court "must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings." In practice, the analysis will frequently entail overlap with the merits of the

8

underlying claim. **Price v. Martin**, 2011-0853 (La. 12/6/11), 79 So.3d 960, 966-67. (internal citations omitted).

Class action rules do not set forth a mere pleading standard; rather "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." **Id.**, *citing*, **Wal-Mart Stores, Inc. v. Dukes**, 564 U.S. 338, 351, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (emphasis in original).[7] While any errors to be made in deciding class action issues should, as a general rule, be in favor of and not against the maintenance of the class action because a class certification is always subject to modification or decertification if later developments so require, that general rule cannot and should not be used as a substitute for the rigorous analysis required to determine whether the prerequisites of Louisiana's class action provisions have *in fact* been satisfied. **Price**, 79 So.3d at 967; see also La. Code Civ. P. art. 592(A)(3)(c).

In reviewing a judgment on class certification, the district court's factual findings are subject to the manifest error standard, while the court's ultimate decision regarding whether to certify the class is reviewed under the abuse of discretion standard. Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed *de novo*. **Brooks**, 13 So.3d at 554.

The requirements for class certification applicable to this action are found in La. Code Civ. P. art. 591. Article 591(A) sets forth five threshold requirements that must be met and provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all, only if:

---

[7] While the Supreme Court's discussion in **Wal-Mart Stores, Inc.** centers on Fed. Rule Civ. Proc. 23, the Louisiana Supreme Court has previously found that, to the extent La. Code Civ. P. art. 591 parallels Rule 23 regarding class actions, Louisiana's class certification analysis is appropriately informed by federal jurisprudence interpreting Rule 23. **Dupree**, 51 So.3d at 684, n. 8.

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of law or fact common to the class.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

(4) The representative parties will fairly and adequately protect the interests of the class.

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

Each of these requirements must be met for an action to be maintained as a class action; failure to meet one of these threshold requirements precludes class certification. La. Code Civ. P. art. 591(B); see also **Doe v. Southern Gyms, LLC**, 2012-1566 (La. 3/19/13), 112 So.3d 822, 828. The burden of proving the statutory class certification criteria have been satisfied falls on the party seeking to maintain the class action. **Dupree**, 51 So.3d at 682.

In addition to these five prerequisites, La. Code Civ. P. art. 591(B) lists additional requirements that must be met, depending on the type of class action sought. In this case, the plaintiffs submit, and the district court found, that the additional requirement that must be satisfied is in both La. Code Civ. P. arts. 591(B)(1)(a) and (B)(2), which state, respectively, that "[t]he prosecution of separate actions by or against individual members of the class would create a risk of [i]nconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class," and "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"

10

However, La. Code Civ. P. art. 591(C) cautions that class "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." Nevertheless, where certification is maintained, "the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class."

*COMMONALITY*

For our analysis, we first turn to the prerequisite of commonality, which requires a party seeking class certification to show that "[t]here are questions of law or fact common to the class." La. Code Civ. P. art. 591(A)(2). The mere existence of common questions, however, will not satisfy the commonality requirement. Commonality requires a party seeking certification to demonstrate that the class members' claims depend on a common contention, and that common contention must be one capable of class-wide resolution – one where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." **Price**, 79 So.3d at 969, *citing*, **Wal-Mart Stores, Inc.**, 564 U.S. at 350, 131 S.Ct. at 2551. "To satisfy the commonality requirement, there must exist 'as to the totality of the issues a common nucleus of operative facts . .' A common question is one that, when answered as to one class member, is answered as to all of them." **Price**, 79 So.3d at 969, *citing*, **Dupree**, 51 So.3d at 682-83; see also **Fontcuberta v. Cleco Corporation**, 2016-1477 (La. App. 1st Cir. 6/2/17), 222 So.3d 235, 242. When each member of the proposed class will necessarily have to offer different facts to establish liability, "the class [will] degenerate into a series of individual trials[,]" and it is reversible error to certify a class. **Alexander v. Norfolk S. Corp.**, 2011-2793 (La. 3/9/12), 82 So.3d 1234, 1236 (per curiam).

We find the Supreme Court's recent decision in **State v. Covington**, 2020-00447 (La. 12/1/20), ___ So.3d ___, 2020 WL 7301278, particularly instructive in analyzing this specific certification prerequisite. Therein, the Chief Indigent

Defender for the Office of Public Defender for East Baton Rouge Parish filed a "Motion to Withdraw from Current Appointments and to Decline Future Appointments," alleging "long term chronic underfunding of the public defender's office had necessitated the implementation of 'service restriction protocols', ... [leading] to the elimination of a number of attorney and support staff positions." **Id.** at *1. The Chief Indigent Defender asserted that the "consequent increase in the workloads of the remaining attorneys could *potentially create* conflicts of interest, as counsel might have to allot more time to one case over another, and could *potentially cause* ineffective assistance of counsel[.]" (emphasis added). **Id.** We note these assertions are substantially similar to the allegations advanced by plaintiffs herein: the "structural limitations" of the Louisiana public defender system include "acute lack of resources, endemic conflicts of interest, lack of independence, unreasonably high workloads, and lack of supervision, [all of which] create an impenetrable barrier to effective representation."

The district court denied the Chief Indigent Defender's motion and, on appeal, this court reversed this judgment, finding the Chief Indigent Defender "presented sufficient evidence to the district court that shows the appointed public defenders cannot effectively represent their indigent clients in a manner consistent with their constitutional and ethical obligations due to excessive caseloads. There is a conflict of interest when a public defender is compelled by his or her excessive caseload to choose between the rights of the various indigent defendants he or she is representing." **State v. Covington**, 2019-1494 (La. App. 1st Cir. 3/13/20), 2020 WL 1230134 at *1. (unpublished). This court continued, "[i]t is well-settled that the Sixth Amendment right to counsel is the right to effective assistance of counsel. That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." **Id.**

12

In reviewing the district court's dismissal of the Chief Indigent Defender's motion, the Louisiana Supreme Court restated its previous holding in **State v. Peart**, 621 So.2d 780, 788 (La. 1993), that, "because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be individualized and fact-driven, which necessarily involves a detailed examination of the specific facts and circumstances of the case." **Covington**, 2020 WL 7301278 at *3. The **Covington** Court continued, citing **Peart**, stating, "the true inquiry is whether an individual defendant has been provided with reasonably effective assistance, and no general finding by the trial court regarding a given lawyer's handling of other cases, or workload generally, can answer that very specific question as to an individual defendant and the defense being furnished him." **Id.** "A determination of effectiveness of counsel requires that the trial court 'examine each case individually,' make 'a particularized finding,' and 'issue an independent judgment regarding each defendant.'" **Id.** In concluding that "the question of whether assistance of counsel has been constitutionally ineffective cannot be answered without a detailed examination of the specific facts and circumstances of the representation provided by counsel to the individual defendant," and that any alleged deprivation of Louisiana Constitution, Article I, § 13 "can only be decided on a case-by-case basis," the Louisiana Supreme Court upheld the district court's dismissal of the Chief Indigent Defender's motion. **Id.** at *4-5.

We find **Covington** instructive in that, while utilizing a different procedural vehicle, the arguments of the Chief Indigent Defender are nearly identical to plaintiffs' herein: due to a lack of resources, understaffing, and high attorney workloads, the *potential* exists for not only current violations of an individual defendant's constitutional rights, but also *future* conflicts of interest and/or violations of an individual defendant's federal and state constitutional protections. As such, **Covington**, itself and through a reaffirmation of **Peart**, makes clear that

13

any inquiry into alleged constitutional defectiveness of an individual defendant's representation, particularly based on alleged constitutional defectiveness through insufficient funding and resources of court-appointed counsel, should be decided on a "case-by-case" basis and with a "detailed examination of the specific facts and circumstances of the representation provided by counsel to the individual defendant." **Id**. at *4. This reaffirmed, individualized analysis as articulated in **Covington** also necessarily causes the commonality requirement of class certification to fail, in that "[c]ommonality requires a party seeking certification to demonstrate the class members' claims depend on a common contention, and that common contention must be one capable of class-wide resolution – one where the 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" **Price**, 79 So.3d at 969, *citing,* **Wal-Mart Stores, Inc.**, 564 U.S. at 350, 131 S.Ct. at 2551. Moreover, **Covington** not only addresses the commonality requirement of La. Code Civ. P. art. 591(A)(2), but such a holding also directly invokes the prohibition of class certification contained in La. Code Civ. P. art. 591(C): "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class."

Accordingly, based on this recent decision from the Louisiana Supreme Court, its reaffirmation of **Peart**, and the certification restriction contained in La. Code Civ. P. art. 591(C), we find the district court erred in ruling plaintiffs established the commonality requirement for class certification as set forth in La. Code Civ. P. art. 591(A)(2).

*TYPICALITY*

Turning to the typicality requirement of class certification, La. Code Civ. P. art. 591(A)(3) requires that the claims of the class representatives be a cross-section, or typical, of the claims of all class members. Typicality is satisfied if the claims of

14

the class representatives arise out of the same event, practice, or course of conduct giving rise to the claims of the other class members, and are based on the same legal theory. The representatives' claims need not exhibit all of the various types of possible injuries or elements of damages claimed by the class as a whole. **Boyd v. Allied Signal, Inc.**, 2003-1840 (La. App. 1st Cir. 12/30/04), 898 So.2d 450, 464-65, writ denied, 2005-0191 (La. 4/1/05), 897 So.2d 606, *citing*, **Singleton v. Northfield Insurance Co.**, 2001-0447 (La. App. 1st Cir. 5/15/02), 826 So.2d 55, 63-64, writ denied, 2002-1660 (La. 9/30/02), 825 So.2d 1200.

As reaffirmed by the Supreme Court in **Covington**, any analysis or review of a particular indigent defendant's allegation of constitutional violations in connection with claims of systemic "structural barriers," whether for retroactive or prospective relief, is an individualized analysis reserved for the post-conviction relief procedure. As such, claims of one class representative will not be typical of all class members. What could be ineffective assistance of counsel for one class representative could simply be poor lawyering for another. Accordingly, we find the district court erred in ruling plaintiffs established the typicality requirement for class certification as set forth in La. Code Civ. P. art. 591(A)(3).

Finding that plaintiffs failed to satisfy the statutory requirements of commonality and typicality for class certification, we pretermit discussion of the remaining certification factors.

## CONCLUSION

For the above and foregoing reasons, we find class certification inappropriate and reverse the district court's October 11, 2018 judgment granting plaintiffs' Motion to Certify a Class Action. The matter is remanded for further proceedings consistent with this opinion and costs of this appeal are assessed to plaintiffs, Steven Ayres, Keith Arcement, Frederick Bell, Michael Carter, and James Park.

**REVERSED AND REMANDED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0125

JOSEPH ALLEN, et al.

VERSUS

JOHN BEL EDWARDS, IN HIS OFFICIAL CAPACITY AS THE
GOVERNOR OF THE STATE OF LOUISIANA, et al.

WHIPPLE, C.J., concurring with additional reasons.

I agree with the majority that the district court judgment in favor of class certification should be reversed. I write to assign additional reasons.

In my view, the plaintiffs are asking the courts to do something we cannot do under the Louisiana Constitution. Article 1, section 13 states that "[t]he legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents." La. Const. art. I, § 13. Further, under the clear doctrine of separation of powers enumerated in our Constitution, neither the judicial branch, nor the executive branch may exercise power enumerated to the legislative branch. See La. Const. art. II, § 2. Accordingly, I do not believe that we, the courts, can order the executive branch, through either the governor of this state or the Louisiana Public Defender Board, to encroach on the constitutional powers of the legislative branch in the manner and relief sought in this litigation.[1]

---

[1] Moreover, the Louisiana Supreme Court has unambiguously stated that La. Const. art. I, § 13 does not create a personal right of action that individual defendants can exercise against the legislature. State v. Peart, 621 So. 2d 780, 786 (La. 1993). In fact, "Even if the legislature fails to respond to the constitutional command, individual defendants can not force legislative action on the basis of the last sentence of art. 1 sec. 13." Peart, 621 So. 2d 780, 786.

Additionally, the plaintiffs in this case assert claims under Section 1983[2] and the Louisiana Constitution for injunctive and declaratory relief. However, Louisiana law is clear that the courts do not have jurisdiction to issue any injunction against a state board or officer in a suit that involves the expenditure of state funds when the director of the board or agency certifies that the expenditure of the funds "would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature." LSA-C.C.P. art. 3601; LA-R.S. 13:4062.

The record herein contains the affidavit of defendant James T. Dixon, who, at the time was the Louisiana State Public Defender, wherein he attests that "any such injunctive relief requested by this suit would compel the expenditure of state funds and compel the expenditure of state funds by the Louisiana Public Defender Board." Additionally, Mr. Dixon certified that injunctive relief "would have the effect of creating a deficit in the funds of the said Louisiana Public Defender Board or be in violation of the requirements placed upon the expenditure of such funds by the Legislature."

This court has previously ruled that the expenditure of state funds is a matter reserved to the legislative branch and an exception pleading the objection of lack of subject matter jurisdiction is properly sustained by the trial court when the agency's director has certified that the expenditure of the funds would create a deficit in the funds of that agency. East Baton Rouge Parish School Board v. State Board of Trustees of the State Employees Group Benefit Program, 96–1793 (La. App. 1st Cir. 9/19/97), 700 So. 2d 945, 950, writ denied, 97–3116 (La. 2/13/98),

---

[2] Pursuant to 42 U.S.C.A. §1983, claims may be brought against any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights privileges, or immunities secured by the Constitution and laws."

2

709 So. 2d 758. Accordingly, under the clear language of the law, I believe the courts are unable to order any injunctive relief in this matter.

Moreover, the plaintiffs in this case are all "charged" with offenses and the trial court defined the class as "all persons who are facing criminal charges punishable by a term of imprisonment brought by the State of Louisiana, excluding individuals charged with a capital offense, proceeding *pro se*, or represented by private counsel and juveniles whose cases are assigned to Juvenile Courts." Under Strickland, an ineffective assistance of counsel claim should be raised in post-trial proceedings. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). As the putative class in this case consists of individuals who are "facing criminal charges," there is no basis for them to raise ineffective assistance of counsel claims under Strickland. In fact, the Peart court reaffirmed the notion that ineffective assistance of counsel claims are generally raised in post-trial proceedings and found that these claims may only be heard before trial when "the judge has an adequate record before him and a defendant has claimed that he is receiving ineffective assistance of counsel before trial." Peart, 621 So. 2d 780, 787. I do not believe that we have an adequate record before us in which to make this determination, as we do not have the records from each plaintiff's criminal proceedings, a feat which would be made more difficult by the certification of an entire class of plaintiffs.

Thus, I agree with the majority's decision to reverse the judgment of the district court certifying the class, as I do not believe the plaintiffs have stated a claim for which the judicial system can grant relief. For these reasons, I respectfully concur.

3

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0125

JOSEPH ALLEN, STEVEN AYRES, ASHLEY HURLBURT, RORY KEVIN GATES, JAMES HOWARD, DEMARCUS MORROW, RODNEY WALLER, KEITH ARCEMENT, FREDERICK BALL, GENARO CRUZ GOMEZ, SAM YBARRA, MICHAEL CARTER, & JAMES PARKER, ON BEHALF OF THEMSELVES & ALL OTHERS SIMILARLY SITUATED

VERSUS

JOHN BEL EDWARDS IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA, ZITA JACKSON ANDRUS, CHRIS L. BOWMAN, FLOZELL DANIELS, JR., THOMAS D. DAVENPORT, JR., PATRICK J. FANNING, W. ROSS FOOTE, KATHERINE E. GILMER, MICHAEL C. GINART, JR., FRANK HOLTHAUS, DONALD W. NORTH, & MOSES JUNIOR WILLIAMS, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE LOUISIANA PUBLIC DEFENDER BOARD, & JAMES T. DIXON, JR., IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE PUBLIC DEFENDER

GUIDRY, J., dissents and assigns reasons.

**GUIDRY, J., dissenting.**

I respectfully dissent.

Pursuant to the Sixth Amendment of the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense." In the seminal case on an indigent defendant's right to counsel when charged with a felony in state courts,[1] Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court stated as follows:

---

[1] The right to assistance of counsel was later extended to misdemeanors where there was the possibility of imprisonment. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

1

'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.'

Gideon, 372 U.S. at 344-45, 83 S.Ct. at 796-97 (quoting Powell v. State of Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). Maine v. Moulton, 474 U.S. 159, 160, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) ("to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself.").

Moreover, in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court acknowledged that the Sixth Amendment's right to be assisted by counsel is, by far, the most pervasive right granted to a person accused of a crime, as it affects his ability to assert any other rights to which he is entitled. Cronic, 466 U.S. at 654, 104 S.Ct. at 2044. Further, the Supreme Court observed:

The [Sixth] Amendment requires not merely the provision of counsel to the accused, but "Assistance," which is to be "for his defence." Thus, "the core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973). If no actual "Assistance" "for" the accused's "defence" is provided, then the constitutional guarantee has been violated. To hold otherwise

"could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940) (footnote omitted).

> Thus, in *McMann* the Court indicated that the accused is entitled to "a reasonably competent attorney," 397 U.S., at 770, 90 S.Ct., at 1448, whose advice is "within the range of competence demanded of attorneys in criminal cases." *Id.*, at 771, 90 S.Ct., at 1449. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), we held that the Constitution guarantees an accused "adequate legal assistance." *Id.*, at 344, 100 S.Ct., at 1716. And in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court referred to the criminal defendant's constitutional guarantee of "a fair trial and a competent attorney." *Id.*, at 134, 102 S.Ct., at 1575.

Cronic, 466 U.S. at 654-55, 104 S.Ct. at 2044.

In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court "granted certiorari to consider the standards by which to judge a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel." Strickland, 466 U.S. at 684, 104 S.Ct. at 2063. The Strickland Court set forth a two-part test to determine whether a convicted defendant's counsel's performance was so defective as to require the conviction to be overturned: (1) the convicted defendant must show that his counsel's performance was defective, i.e., that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendants by the Sixth Amendment; and (2) the defendant must show that the deficient performance prejudices the defense, which requires defendant to establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. Therefore, the inquiry in Strickland is necessarily fact-specific to a particular case.

Some courts have addressed purely prospective relief for alleged systemic deficiencies affecting the Sixth Amendment's right to the assistance of counsel in

3

the context of determining whether class action plaintiffs stated cognizable causes of action. Notably, a number of these courts found the application of the fact-specific Strickland standard to be inappropriate.

In Luckey v. Harris, 860 F.2d 1012 (11th Cir. 1988), cert. denied, 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990), class action plaintiffs (indigent persons currently charged or who will be charged with a crime in Georgia) contended that systemic delays in the appointment of counsel denied them their Sixth Amendment right to the assistance of counsel at critical stages in the criminal process; hampered the ability of their counsel to defend them; effectively denied them their right to bail; that their appointed attorneys were denied investigative and expert resources necessary to defend them effectively; that their attorneys were pressured by courts to hurry their case to trial or to enter a guilty plea; and that they were denied equal protection of the laws. Luckey, 860 F.2d at 1018.

The Eleventh Circuit Court of Appeals determined that plaintiffs' allegations stated a claim upon which relief could be granted, but declined to pass on the merits of the allegations themselves. In so ruling, the federal court concluded that the standard set forth in Strickland for determining when counsel has rendered ineffective assistance was inappropriate for a civil suit seeking prospective relief, as the Sixth Amendment protects rights not affecting the outcome of the trial. Luckey, 860 F.2d at 1017. "Where a party seeks to overturn his or her conviction, powerful considerations warrant granting this relief only where that defendant has been prejudiced" and these considerations do not apply when prospective relief — relief which is designed to avoid future harm — is sought.[2] Luckey, 860 F.2d at 1017. Rather, "[i]n suits for prospective relief the plaintiff's burden is to show 'the likelihood of substantial and immediate irreparable injury, and the inadequacy of

---

[2] The considerations, as set forth in Strickland and noted by the court in Luckey include: "concerns for finality, concern that extensive post-trial burdens would discourage counsel from accepting cases, and concern for the independence of counsel." Luckey, 860 F.2d at 1017.

4

remedies at law,'" which was the standard to which the class action plaintiffs in Luckey should have been held in evaluating whether their complaint stated a claim upon which relief could be granted. Luckey, 860 F.2d at 1017-18 (quoting O'Shea v. Littleton, 414 U.S, 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d. 674 (1974)).

Similarly, in Hurrell-Harring v. State, 15 N.Y.3d 8, 930 N.E.2d 217 (2010), New York's highest court, in a 4-3 decision, allowed a putative class action brought by indigent criminal defendants to proceed. The class plaintiffs asserted claims for declaratory and injunctive relief for alleged violations of their Sixth Amendment right to counsel due to inadequacies in the county-operated indigent defender system. They did not seek individual relief in their respective criminal cases. Rather than analyzing the plaintiffs' constitutional challenge as one for ineffective assistance of counsel, which would be reviewed on an individual basis under Strickland, the court concluded that plaintiffs pled facts sufficient to state a cause of action for denial of counsel under the Sixth Amendment and Gideon, specifically stating as follows:

> *Strickland's* approach is expressly premised on the supposition that the fundamental underlying right to representation under *Gideon* has been enabled by the State in a manner that would justify the presumption that the standard of objective reasonableness will ordinarily be satisfied [(]*see Strickland*, 466 U.S. at 687-689, 104 S.Ct. 2052). The questions properly raised in this Sixth Amendment-grounded action, we think, go not to whether ineffectiveness has assumed systemic dimensions, but rather to whether the State has met its foundational obligation under *Gideon* to provide legal representation.
>
> Inasmuch as general prescriptive relief is unavailable and indeed incompatible with the adjudication of claims alleging constitutionally ineffective assistance of counsel, it follows that plaintiffs' claims for prospective systemic relief cannot stand if their gravamen is only that attorneys appointed for them have not, so far, afforded them meaningful and effective representation. While it is defendants' position, and was evidently that of the Appellate Division majority, that the complaint contains only performance-based claims for ineffective assistance, our examination of the pleading leads us to a different conclusion.

Hurrell-Harring, 930 N.E.2d at 221-22. The court examined the pleadings, and, viewing the averments in plaintiffs' favor, ruled that plaintiffs had advanced more than mere allegations of deficient performance. Also see Tucker v. State, 162 Idaho 11, 394 P.3d 54 (2017) (determining that Strickland issues were not implicated in a suit alleging systemic, statewide deficiencies in Idaho's public defense system).

In Kuren v. Luzerne County, 637 Pa. 33, 146 A.3d 715 (2016), the Supreme Court of Pennsylvania was called to decide "whether a cause of action exists entitling a class of indigent criminal defendants to allege prospective, systemic violations of the right to counsel due to underfunding, and to seek and obtain an injunction forcing a county to provide adequate funding to a public defender's office." Kuren, 146 A.3d at 718. Observing that Strickland did not dictate that post-conviction prejudice was a prerequisite to advancing a Sixth Amendment violation of the right to the assistance of counsel, the court stated that "[v]iolations of the right to counsel can occur in many different ways, and remedies for such violations are not limited solely to circumstances where prejudice can be proven. Only the remedy of a new trial requires a showing of prejudice." Kuren, 146 A.3d at 743. In fact, the court in Kuren opined as follows:

> Applying the Strickland test to the category of claims at bar would be illogical. Appellants are not arguing individual claims of ineffective assistance of counsel. Appellants point to no specific instances in which an attorney failed to provide constitutionally effective stewardship. Rather, Appellants' claim centers upon the widespread and endemic inability of the OPD's attorneys to provide counsel to indigent defendants. Appellants assert that the OPD lacks the number of attorneys and staff necessary to manage the large and increasing caseload in Luzerne County. The attorneys that the OPD does employ are so constrained in time and resources that they cannot provide the basic services that sustain and foster the attorney client relationship, and cannot devote the effort necessary to investigate and defend against the prosecution's case. These general allegations in no way resemble the individual ineffectiveness claims that the Court considered in Strickland. There is no performance by individual counsel to evaluate, nor is there a trial, the reliability of which might be questioned. There are no interests in avoiding a retrial, nor are

6

there any decisions made by counsel that warrant deference. Appellants are challenging whether Luzerne County, via its funding, is meeting Gideon's mandate in the first instance. This is a structural claim, not an individual one.

Kuren, 146 A.3d at 746. The court ultimately held that there was "a cognizable cause of action whereby a class of indigent defendants may seek relief for a widespread, systematic and constructive denial of counsel when alleged deficiencies in funding and resources provided by the county deny indigent defendants their constitutional right to counsel." Kuren, 146 A.3d at 743. Also see Tucker, 394 P.3d at 63 ("Alleging systemic inadequacies in a public defense system results in actual or constructive denials of counsel at critical stages of the prosecution suffices to show an injury in fact to establish standing in a suit for deprivation of constitutional rights.").

Like the Sixth Amendment in the United States Constitution, the Louisiana Constitution guarantees various rights to persons accused of a crime, namely the right to assistance of counsel in Article I, §13. Pertinent to the matter at hand, the Louisiana Constitution provides that "[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." La. Const. art. I, §13. Further, the legislature "shall provide for a uniform system for securing and compensating qualified counsel for indigents." La. Const. art. I, §13.

In State v. Peart, 621 So. 2d 780 (La. 1993), an indigent criminal defendant, challenged the adequacy of the representation provided to him by the public defender assigned to Section E of the Orleans Parish Criminal District Court. Peart's attorney was handling 70 active felony cases at the time the attorney was appointed for Peart. Peart, 621 So. 2d at 784. The attorney's clients typically remained incarcerated between 30 and 70 days prior to meeting with him, and over a seven-month period, the attorney represented 418 defendants and had at least one

7

case set for trial for every trial date during that time. Peart, 621 So. 2d at 784. Due to limited funding, Peart's attorney routinely did not receive investigative support or have expert witnesses. Peart, 621 So. 2d at 784. The Louisiana Supreme Court was presented, in part, with questions of whether La. Const. art. I, §13's directive to the legislature to "provide for a uniform system for securing and compensating qualified counsel for indigents" was enforceable by an individual criminal defendant; whether a court could address a criminal defendant's claim that he was receiving ineffective assistance of counsel prior to trial; and whether the indigent defendants of Section E were being provided the effective assistance of counsel the constitution requires.

The court in Peart, determined that the fourth sentence of La. Const. art. I, §13, stating that the legislature "shall provide for a uniform system for securing and compensating qualified counsel for indigents," did not create a personal right which individual defendants are entitled to exercise. Peart, 621 So. 2d 786. The fact that the legislature had failed to comply with the constitutional mandate set forth in La. Const. art. I, §13 did not give individual defendants the ability to force legislative action based on the last sentence of Article 13.[3] Peart, 621 So. 2d 786.

The Louisiana Supreme Court recognized that there are exceptions to the general practice of deferring ineffective assistance of counsel claims to post-conviction proceedings.

---

[3] The Peart court did not expressly comment on whether a civil cause of action lies in the first three sentences of Article I §13. Instead, Peart recognized that the final sentence of Article I §13 "does not continue the list of rights of a defendant, but rather simply 'mandates' the legislature do something to protect the enumerated rights." Peart, 621 So. 2d at 786. As Justice Dennis pointed out in his dissent, the final sentence of Article I §13 is "not the principal source of the right to counsel guarantees or the exclusive determinate of their meaning or content." Justice Dennis opined that the final sentence is simply a mandate to the legislature to provide for and fully implement the delivery of reasonably effective assistance of counsel to indigents through a uniform system. Peart, 621 So. 2d at 794. Justice Dennis "decline[d] to join the majority's decision because it d[id] not realistically and thoroughly address or attempt to remedy the systemic constitutional deficiencies affecting the provision of indigent defense services in Orleans and perhaps other parishes." Peart, 621 So. 2d at 792.

> If the trial court has sufficient information before trial, the judge can most efficiently inquire into any inadequacy and attempt to remedy it. Thus, treating ineffective assistance claims before trial where possible will further the interests of judicial economy. *State v. Ratcliff* [416 So. 2d 528, 530 (La. 1982)]. It will also protect the defendants' constitutional rights, and preserve the integrity of the trial process. It matters not that the ineffective assistance rendered may or may not affect the outcome of the trial to the defendant's detriment. *See Luckey v. Harris*, 860 F.2d 1012, 1017 (11ᵗʰ Cir. 1988), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990) (constitutional provisions securing assistance of counsel for defendants protect process rights "that do not affect the outcome of a trial"); Rodger Citron, Note, *(Un)Luckey v. Miller: The Case for Structural Injunction to Improve Indigent Defense Services*, 101 Yale L.J. 481, 493-94 (1991) ("the right to counsel is more than just a right to an outcome").

Peart, 621 So. 2d at 787. Therefore, the court concluded that if a defendant has claimed that he is receiving ineffective assistance of counsel before trial and there is an adequate record for review, the judge may rule on the ineffective assistance of counsel at that time. Peart, 621 So. 2d at 787. Also see Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), where the United States Supreme Court recognized a Strickland claim for ineffective assistance of counsel in connection with legal advice provided prior to the defendant's pre-trial plea. The Court determined that the defendant, a noncitizen, sufficiently alleged a Sixth Amendment violation for ineffective assistance of counsel after his attorney misinformed him regarding the certain consequences (deportation) of a guilty plea.[4]

While the court in Peart found that the "determination of effectiveness of counsel requires that the trial court examine each case individually," it concluded that it was required, based on the record and the judgment under review in the case, to make "some global findings about the state of indigent defense in Section E of

---

[4] The Padilla Court noted its long history of recognizing that the ABA's best practices standards and the expectations of the legal community are guides to determine what is reasonable in terms of representation, specifically stating that "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable," and as "only guides" they are not "inexorable commands." Padilla, 559 U.S. at 366-67, 130 S.Ct. at 1482.

Orleans Criminal District Court." Peart, 621 So. 2d at 788. The Louisiana Supreme Court first observed that the system established by legislative statutes at the time did not appear to afford indigent defendants reasonably effective assistance of counsel, which the court understood to mean that the lawyer possess adequate skill and knowledge as well as the time and the resources to apply the skill and knowledge to the job of defending each of his clients. Peart, 621 So. 2d at 789. Further, the court stated that "[m]any indigent defendants in Section E are provided with counsel who can perform only pro forma, especially at early stages of the proceedings[] [and] are often subsequently provided with counsel who are so overburdened as to be effectively unqualified." Peart, 621 So. 2d at 789.

In view of the unchallenged evidence of "excessive caseloads and the insufficient support with which their attorneys must work," the court in Peart found the indigent defendants of Section E were not generally provided with the effective assistance of counsel the constitution requires. Peart, 621 So. 2d at 790. The court determined that the appropriate remedy was to apply a rebuttable presumption that indigent defendants in Section E were not receiving assistance of counsel sufficiently effective to meet constitutionally required standards.[5] However, the Louisiana Supreme Court also cautioned that, if legislative action was not forthcoming and indigent defense reform did not take place, the court, "in the exercise of its constitutional and inherent power and supervisory jurisdiction, may find it necessary to employ the more intrusive and specific measures it has thus far avoided to ensure that indigent defendants receive reasonably effective assistance of counsel." Peart, 621 So. 2d at 791. Also see State v. Citizens, 04-1841, pp. 15-

---

[5] In considering the remedy to be imposed, the court observed that it had a duty to interpret and apply the constitution "[b]y virtue of th[e] Court's constitutional position as 'the final arbiter of the meaning of the state constitution and laws.'" Peart, 621 So. 2d at 790 (citations omitted). The court further observed that it is endowed with general supervisory jurisdiction over all other courts and has the inherent power to take steps that are reasonably necessary for the exercise of its functions, which inherent power includes the ability to create remedies which will "promote the orderly and expeditious administration of justice." Peart, 621 So. 2d at 790-91

10

16 (La. 4/1/05), 898 So. 2d 325, 337-38, where the Louisiana Supreme Court stated that, "[w]e are very much cognizant of the lengths to which other state courts have gone to ensure that the indigents' constitutional rights are protected, in spite of legislative inaction. This is particularly appropriate in cases involving indigent defense in our state courts, as this is an area over which this Court has supervisory jurisdiction and the duty to ensure that the criminal justice system is functioning in a constitutional manner."

In response to La. Const. art. I, §13 and after the Peart and Citizens decisions in 2007, the legislature established Louisiana's indigent defender system through the enactment of the Louisiana Public Defender Act (the "Act"), La. R.S. 15:141, et seq. Through the Act, the legislature provided the general framework and resources necessary for the delivery of public defender services in accordance with the state's obligation to ensure assistance of counsel to every indigent person charged with a crime punishable by imprisonment at each stage of the proceeding. La. R.S. 15:142(A). Pursuant to the Act, the Louisiana Public Defender Board (the "Board") was created and established as a state agency, with the power to sue and be sued, under the office of the governor.[6] La. R.S. 15:146(A).

The Board's stated purpose is to provide for the "supervision, administration, and delivery of a statewide public defender system, which shall deliver uniform public defender services in all courts in this state." La. R.S. 15:146(A). The legislature gave the Board the responsibility and obligation to establish statewide standards and guidelines, the uniform application of which the legislature stated was an important means of a more consistent delivery of quality

---

[6] In accordance with Article VI, §5(A) of the Louisiana Constitution, Governor Edwards is required to "faithfully support the constitution and laws of the state and of the United States" and ensure "that the laws are faithfully executed." See also 4 U.S.C.A. §101 ("Every member of a State legislature, and every executive and judicial officer of a State, shall, before he proceeds to execute the duties of his office, take an oath in the following form, to wit: 'I, A B, do solemnly swear that I will support the Constitution of the United States.'")

11

representation in the state. La. R.S. 15:142(C). The Board was granted "all regulatory authority, control, supervision, and jurisdiction, including auditing and enforcement, and all power incidental or necessary to such regulatory authority, control, supervision, and jurisdiction over all aspects of the delivery of public defender services throughout the courts of the state of Louisiana." La. R.S. 15:147(A).

Despite the promulgation of the Act by the legislature and the implementation of statewide standards and guidelines, the public defender system in Louisiana remains problematic, which was most recently brought to light in the case of State v. Covington, 20-0447 (La. 12/1/20), ___ So.3d ___. In Covington, the chief indigent defender in East Baton Rouge Parish ("public defender") filed motions to withdraw from appointments in multiple cases pending before Section VI of the Nineteenth Judicial District Court and further requested to decline future appointments. The public defender alleged that long-term underfunding of the public defender's office necessitated the implementation of "service restriction protocols," as provided in LAC 22:XV.1701, et seq., and led to the elimination of numerous attorney and support staff positions. As a consequence, it was argued that the increased workloads of the remaining attorneys could potentially create conflicts of interests and potentially cause ineffective assistance of counsel, rendering the attorneys in violation of various rules of the Louisiana Rules of Professional Conduct. In support of the motions to withdraw, the public defender relied upon the testimony of an expert witness who provided opinions on the amount of time an attorney should spend on certain types of cases to provide reasonably effective assistance of counsel. The trial court denied the motions, implicitly finding that any remedy related to chronic underfunding of the public defender system was within the exclusive purview of the Louisiana Legislature and was outside the parameters of what the court had the authority to fashion; however,

12

the trial court stated that it would consider any individual motions to withdraw from, or to decline, representation on a case-by-case basis. Covington, 20-0447, at pp. 1-4, ___ So.3d at ___.

Notwithstanding this court's determination that a conflict of interest existed when a public defender is compelled by his or her excessive caseload to choose between the rights of the various indigent defendants he or she is representing and this court's observation that a trial court can use its inherent authority over its docket to triage cases and manage their dockets in ways that both move cases and respect the constitutional and statutory rights of the defendant, prosecutor, and public defender in State v. Covington, 19-1494 (La. App. 1st Cir. 3/13/20) (unpublished writ action), the Supreme Court reversed this court's action and reinstated the trial court's rulings. The Supreme Court noted the "stark contrast" between the facts of Covington and those of Peart and the lack of evidence adduced to show what type of defense was being provided to the individual defendants at issue. Rather, the only evidence supplied by the public defender in Covington established the amount of hours of legal work a public defender *should* provide in any given scenario. The Supreme Court further noted that the public defender failed to exhaust all of the statutory and administrative options available to address his assistant public defenders' workloads, such as the appointment of private counsel to represent indigent defendants as set forth in LAC 22:XV.1717.E. Accordingly, the Court concluded,

> the appellate court finding - that Mr. Mitchell "presented sufficient evidence to the district court that shows the appointed public defenders cannot effectively represent their indigent clients in a manner consistent with their constitutional and ethical obligations due to excessive caseloads" (see **State v. Covington**, 19-1494 at p. 1, 297 So.3d 765) - was reached without evidence of the specific factual details surrounding the work performance of the individual assistant public defenders, vis-à-vis the individual defendants, in these consolidated cases, contrary to this court's holding in **State v. Peart**. As we held in **State v. Peart**, the question of whether assistance of counsel has been constitutionally ineffective cannot be answered

13

without a detailed examination of the specific facts and circumstances of the representation provided by counsel to the individual defendant. **State v. Peart**, 621 So.2d at 788. Therefore, the appellate court erred in reversing the district court and ruling in favor of Mr. Mitchell.

Covington, 20-0447, at pp. 8-9, ___ So.3d at ___.

The present case is fundamentally different, as it neither seeks the extreme remedy of overturning convictions nor does it seek to have a public defender withdraw from any case. Moreover, the continued and, sometimes, forced application of the Strickland analysis to cases not seeking the extraordinary remedy of overturning a conviction is a convenient escape all too many courts employ, which glosses over whether the fundamental underlying right to representation pursuant to Gideon has, in fact, been supplied.

In their sole assignment of error, defendants contend that the trial court erred in certifying the class without conducting a rigorous analysis of the requirements set forth in La. C.C.P. art. 591. Defendants further contend plaintiffs failed to meet their burden of proof as to each of the factors set forth in La. C.C.P. art. 591(A) (numerosity, commonality, typicality, adequacy of representation, and an objectively definable class) and failed to meet the requirements of La. C.C.P. art. 591(B) and (C). I would find no merit in defendants' assignment of error.

Numerosity and Ascertainability

The requirement set forth in La. C.C.P. art. 591(A)(1), numerosity, is based on the facts and circumstances of the particular case and reflects the basic function of a class action: a device for allowing a small number of persons to protect or enforce rights for the benefit of many where it would be inequitable and impracticable to join every person sharing an interest in the rights at issue in the case. Baker v. PHC-Minden, L.P., 14-2243, p. 19 (La. 5/5/15), 167 So. 3d 528, 542. Numerosity is satisfied by establishing that joinder is impractical and that there exists a definable group of aggrieved persons. Doe v. S. Gyms, LLC, 12-

14

1566, p. 12 (La. 3/19/13), 112 So. 3d 822, 831. In part, this requirement is based on the number of potential class members; however, the determination of numerosity is also based upon considerations such as the geographic dispersion of the class; the ease of identification of the class; the nature of the action; the size of the individual clams; the financial resources of class members; and judicial economy in avoiding a multiplicity of lawsuits. Doe, 12-1566 at p. 12, 112 So. 3d at 831. Importantly, a party seeking to certify a class is not required to identify every single member of the potential class prior to certification. Doe, 12-1566 at pp. 12, 112 So. 3d at 831.

Pursuant to La. C.C.P. art. 591(A)(5), the class must be susceptible of being objectively defined by ascertainable criteria so that the trial court is able to determine the constituency of the class for purposes of conclusiveness of any judgment rendered. It is necessary that the parties seeking certification be able to establish a definable group of aggrieved persons based on objective criteria obtained from the operative facts of the case. Stewart v. Rhodia Inc., 11-0434, p. 6 (La. App. 1st Cir. 3/14/12), 96 So. 3d 482, 488. Such requirement ensures that the proposed class is not amorphous, vague, or indeterminate. Stewart, 11-0434 at p. 6, 96 So. 3d at 488.

According to defendants, the class definition is too broad and overly inclusive to satisfy the ascertainability requirement of La. C.C.P. art. 591(A)(5). Defendants contend that the class, as presently defined, does not identify plaintiffs with plausible claims against defendants, and the trial court will not be able to determine which class members are, in fact, suffering prejudice and irreparable harm from the lack of effective representation by their court-appointed counsel. Additionally, defendants contend that plaintiffs failed to meet their burden of proof as to the numerosity requirement of La. C.C.P. art. 591(A)(1) because plaintiffs did not identify a defined group of persons with plausible claims against defendants.

15

As argued by plaintiffs, the class members are aggrieved because they all are subjected to the same risk of irreparable harm: constructive denial of counsel which rises to the level of violations of both the United States and Louisiana Constitutions. Plaintiffs allege that the Louisiana's public defense system fails to provide effective representation to poor criminal defendants in the state. Plaintiffs also allege that the public defense system does not possess what they describe as "traditional markers of effective representation." According to plaintiffs, these traditional markers include timely and meaningful adversarial testing of the prosecution's case, the pressing of necessary motions, timely and confidential consultation with clients, and appropriate case investigation. Plaintiffs contend these traditional markers of effective representation are either absent from the delivery of the public defender services in Louisiana or so significantly compromised on a system wide basis that the poor in Louisiana suffer an intolerable risk that they will be denied meaningful and effective assistance of counsel.

Notably, the Board's own annual report for the year 2017 stated as follows:

Workloads remain too high throughout the state, creating backlogs in court, overworked attorneys, and under-represented clients. ... [T]he workload of our attorneys is almost five times what is should be. Public defenders in Louisiana cannot possibly provide constitutionally adequate representation with workloads of this magnitude and it is the poor of this state who suffer for it.

Mr. Dixon, the current State Public Defender, testified that there are many public defenders who are presented with the situation where they simply do not have the time to provide the defense that should be provided. Notably, the Board's caseload standard is a maximum of 200 felony cases and a maximum of 450 misdemeanor cases, which is higher than the national standards, and Louisiana's standards

16

exceed every other known caseload standard in the United States.[7] Plaintiffs' expert, Robert C. Boruchowitz, detailed in his affidavit that the Board's own reports indicated that most of the public defenders in the state's forty-two districts have caseloads exceeding national caseload standard limits, and defenders in thirty-nine districts had caseloads exceeding even the standards set forth by the Board.

Illustrating the effects of the excessive caseloads is the observation made in a Board staff report submitted in connection with the May 2018 Board meeting. In the report regarding the Fourteenth District Public Defender's Office, staff noted that the primary challenge facing the office was the excessively high caseloads. In the Fourteenth District, the public defenders took in between 400 and 500 felony cases per year, which was in addition to the cases that carry over from one year to the next. It was observed that the number may be excessively high in light of the fact that a number of the cases may not be prosecuted but that the office could do well with the addition of another full time attorney. Most striking, however, was the report of one of the public defenders in the office who indicated that the heavy caseload makes it effectively impossible to meet the accepted standard of meeting each incarcerated client within forty-eight hours of appointment.

Jean Faria, the Capital Case Coordinator for the Board and former State Public Defender, agreed that underfunding,[8] conflicts of interest,[9] failure to enforce

---

[7] According to an Executive Summary dated July 15, 2015, Mr. Dixon reported that the Louisiana caseload standards were promulgated in 1994 when the Louisiana Indigent Defender Board took the National Advisory Commission on Criminal Justice Standards and Goals and added fifty cases to all categories of cases except capital.

[8] Mr. Dixon testified that, as stated in a report (Criminal Justice at a Crossroads, October 2014), the criminal justice system was in crisis, in part, due to the unreliability and instability of local funding, as public defender offices have no control over the revenue streams, their collection, or disbursement.

[9] Ms. Faria testified that there is no question of a conflict of interest between a private paying client and a public defender client, noting that she has observed defenders requesting a prosecutor to cut them some slack in a particular case, citing that the case involved a paying client.

performance standards,[10] failure to provide adequate training, and lack of access to investigators, experts, and social workers were all systemic issues for the public defense system. All of these systemic barriers and problems, Ms. Faria testified, were all still present in the current system. Additionally, Mr. Dixon testified that there are instances where indigent defendants should get an expert, and do not, and there are cases all over the state where defendants are not receiving a thorough investigation by an investigator.

Plaintiffs illustrate the alleged lack of effective assistance of counsel with each of the named plaintiffs' experiences (or lack thereof) with their respective public defenders. Plaintiffs allegations include claims of limited or no communication with appointed counsel, which left them "in the dark" about the nature of their proceedings, possible defenses, case strategy, and the strength of the charges against them. Further, plaintiffs claim their appointed attorneys failed to perform investigations, failed to file or respond to pretrial motions, and/or ignored plaintiffs' requests for access to the State's discovery responses or disclosures or failed to explain the contents of the discovery if provided. Plaintiffs maintain that their experiences are illustrative of the type of inadequate, unconstitutional representation provided to indigent defendants throughout the State, which causes irreparable harm and prejudice to each member of the class.

---

[10] The Act requires the Board to adopt rules necessary to implement the Act, which shall include rules providing for manageable public defender workloads that permit the rendering of competent representation; continuity of representations; documentation of communication; performance supervision protocols; performance of public defenders in assigned public defense cases; and consistency of standards. La. R.S. 15:148(A) and (B). Plaintiffs acknowledge that the Board has promulgated performance standards for public defenders and attorneys working for the Board in accordance with the statutory mandate of La. R.S. 15:148, but maintain that the representation provided to plaintiffs and members of the class fall short of the standards. In fact, Ms. Faira agreed that establishing standards is not enough and that monitoring, training, and enforcement is necessary in order for the established standards to be more than just aspirational goals. According to the testimony of Mr. Dixon, the Board did not have a Trial Compliance Officer as of the summer of 2017.

Plaintiffs submitted the deposition transcripts of plaintiffs Steven Ayres, Keith Arcement, Frederick Bell, Michael Carter, and James Park to further illustrate their allegations in support of the motion to certify the class, which depositions supported a number of the allegations made in the petition. While defendants submitted evidence specific to each of the named plaintiffs' criminal cases in addition to the deposition testimony in an effort to show that none of the plaintiffs have a constitutional claim for ineffective assistance of counsel and, therefore, none of the plaintiffs are aggrieved, there is sufficient evidence, for purposes of class certification, to show that plaintiffs and the class members, as defined, are sufficiently aggrieved. Importantly, plaintiffs are not seeking individualized, post-conviction relief pursuant to Strickland, 466 U.S. 668, 104 S.Ct. 2052; rather, their claims are structural, and plaintiffs seek broad, prospective declaratory and injunctive relief to protect against the substantial risk of irreparable harm to indigent defendants resulting from the defendants' current policies and practices, by which all plaintiffs and putatitve class members are affected.

The class has been defined as "all persons who are indigent and facing criminal charges punishable by a term of imprisonment brought by the State of Louisiana, excluding individuals charged with a capital offense, proceeding pro se, or represented by private counsel and juveniles whose cases are assigned to Juvenile Courts" The class has been objectively defined in clear terms, and potential claimants are sufficiently alerted to the fact that he or she may be a class member. Smith v. City of New Orleans, 13-0802, p. 10 (La. App. 4th Cir. 12/23/13), 131 So. 3d 511, 518, writ denied, 14-0173 (La. 4/4/14), 135 So. 3d 644, and writ denied, 14-0174 (La. 4/4/14), 135 So. 3d 645.

The evidence in the record establishes that there are tens of thousands of aggrieved class members, making joinder impracticable. Relying upon the Board's annual reports, plaintiffs showed that there were over 133,000 new adult
19

misdemeanor and felony cases received by all districts in the state in the calendar year of 2017 alone, which totaled over 196,000 when combined with the number of pending cases rolled over from 2016.[11] In fact, the state public defender, Mr. Dixon, testified that at any given time there are hundreds of thousands of active cases pending in the public defense system.

Plaintiffs noted that joinder of the tens of thousands of class members would be impracticable, if not for the sheer number alone, but also due to the fact that the composition of the class is constantly changing.[12] When potential class members includes future unknown persons, the joinder of these members is impracticable. See Pederson v. Louisiana State Univ., 213 F.3d 858, 868 n.11 (5th Cir. 2000), citing Jack v. Am. Linen Supply Co., 498 F.2d 122, 124 (5th Cir. 1974). Moreover, as shown in the Board's annual reports, the potential class members are spread throughout the state, coming from every judicial district, and are indigent, both of which weigh in favor of class certification. Doe, 12-1566 at p. 12, 112 So. 3d at 831.

I would find no error in the trial court's determination that plaintiffs have adequately defined the class and established that the number of potential class members is so large that joinder would be impractical.

---

[11] According to the table entitled "All Districts Aggregate CY 2017 Caseloads and Outcomes," the number of adult misdemeanor cases included traffic, parish and municipal ordinances, extradition, and unidentified cases and the number of felony cases did not include those felony cases in which the defendant was subject to life without parole. In prior years, the Board's annual reports only provided the total number of "raw cases" handled, which showed over 240,000 cases handled in 2014 and 2015. For comparison, the total number of "raw cases" handled in 2017 was just over 238,000.

[12] Plaintiffs provided evidence showing snapshots of open public defender cases on specific dates, which identified open cases by the judicial district, docket number, case identification number, opening date, name of the criminal defendant, criminal charge, case status, case type, and name of the assigned attorney. This evidence did illustrate that there could be multiple cases counted in the Board's report that are attributable to one potential class member. Nonetheless, the number of potential class members is not insignificant.

Commonality

The commonality requirement for class certification requires a party seeking class certification to show that there exist questions of law or fact common to the class. La. C.C.P. art. 591(A)(2). The mere existence of common questions, however, will not satisfy the commonality requirement, as it has been recognized that "'[a]ny competently crafted class complaint literally raises common "questions."'" Price v. Martin, 11-0853, p. 10 (La. 12/6/11), 79 So. 3d 960, 969 (quoting Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). Commonality requires a party seeking certification to demonstrate the class members' claims depend on a common contention, and that common contention must be one capable of class-wide resolution, i.e., "one where the 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Price, 11-0853 at p. 10, 79 So. 3d at 969 (quoting Wal-Mart Stores, Inc., 564 U.S. at 350, 131 S.Ct. at 2551).

Defendants contend the commonality requirement is not met in this case, as plaintiffs' common questions of law and fact are little more than an aggregations of generalized grievances about an institution that is not organized or managed in the way plaintiffs would prefer. Further, defendants submit that plaintiffs' claims do not depend on a common contention whose truth or falsity resolves a central issue in one stroke.

However, the plaintiffs claim that the policies and practices of the Board, who is led by the State Public Defender and overseen by the governor, lead to the intolerable risk that the poor of this state charged with a crime will not receive constitutionally adequate assistance of counsel or will be constructively denied

counsel.[13] *The determination of whether, in fact, defendants are acting and/or failing to act in such a systematic way so as to unconstitutionally hinder the right of indigent defendants to constitutionally minimal assistance of counsel is central to the validity of the claims in this case.* Accordingly, the analysis and application of Covington by the majority is misplaced and ignores the actual claims asserted by plaintiffs herein.

All of the putative class members have claims against defendants, are linked by a common complaint, and will utilize common evidence to further their claims.[14] See Display South, Inc. v. Graphics House Sports Promotions, Inc., 07-0925, p. 8 (La. App. 1st Cir. 6/6/08), 992 So. 2d 510, 518, writ not considered, 08-1562 (La. 10/10/08), 993 So. 2d 1274. The defenses available to defendants would necessarily be common to the entire class, as they would be in response to plaintiffs' claims that the defendants systematically fail to monitor and enforce statewide public defender standards and guidelines necessary to ensure that the statewide public defender system provides constitutionally adequate representation to indigent defendants and fail to have sufficient mechanisms in place to mitigate the risk that class members will be assigned a public defender without the time, independence, and/or resources to provide meaningful assistance. See Display South, 07-0925 at pp. 7-8, 992 So. 2d at 518; also see Abshire v. State Through Dep't of Ins., 17-0689 (La. App. 1st Cir. 5/16/18) (unpublished opinion), writ denied sub nom. Abshire v. State, 18-0979 (La. 10/8/18), 253 So. 3d 790 (finding

---

[13] Plaintiffs also allege that, "[a]s a direct and proximate result of the conduct of [d]efendants which was undertaken in their official capacities and under color of state law, [p]laintiffs and the Class have been, and will continue to be, denied equal protection" in violation of the Fourteenth Amendment.

[14] Plaintiffs indicate that the common evidence includes the following: (1) testimony, written admissions and public statements of members of the Board and its staff; (2) the Board's data and reports; (3) studies and investigations by the Louisiana Supreme Court, the United States Department of Justice, social scientists, law professors, and government officials describing the systemic failures of the state's public defense system and their detrimental impact on the state's indigent accused; (4) expert reports regarding the system as a whole; and (5) evidence establishing basic performance and ethical standards for adequate indigent defense systems.

commonality where all claimants suffered loss as a result of alleged actions or inactions of state defendants, namely that defendants allegedly acquiesced in, or failed to regulate the actions of companies perpetrating fraud on investors); DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188 (10th Cir. 2010) (rejecting defendants' arguments that because statistical data showed that only 1.2% of foster children in state custody actually suffered abuse or neglect, then the vast majority of the putative class of foster children in state custody were not under an imminent threat of serious harm and no issue of law or fact was common to all; rather, the Tenth Circuit Court of Appeals observed that the "injury" alleged by plaintiffs was the exposure to an impermissible risk of harm due to the state's alleged agency-wide failure to adequately monitor the class members).

Accordingly, I would find no error in the trial court's determination of commonality.

Typicality

The element of typicality provided for in La. C.C.P. art. 591(A)(3) requires that the class representatives' claims or defense be typical of the claims or defenses of the class; however, the test for typicality is not demanding. Conrad v. Lamarque Ford, Inc., 08-673, p. 18 (La. App. 5th Cir. 5/12/09), 13 So. 3d 1154, 1165, writ denied, 09-1819 (La. 11/6/09), 21 So. 3d 310. The interests and claims of the named plaintiffs need not be identical to those of the putative class members to satisfy typicality. DG, 594 F.3d at 1198. Further, the claims of the class representatives are not required to exhibit all of the various types of possible injuries or elements damage claimed by the class as a whole. Boyd v. Allied Signal, Inc., 03-1840, p. 25 (La. App. 1st Cir. 12/30/04), 898 So. 2d 450, 465, writ denied, 05-0191 (La. 4/1/05), 897 So. 2d 606. Rather, a plaintiffs' claim is typical if arises from the same event, practice, or course of conduct giving rise to the

claims of other class members, which claims arise from the same legal theory. Baker, 14-2243 at p. 21, 167 So. 3d at 543.

The alleged practice or course of conduct out of which the plaintiffs' claims arise is the defendants' failure to maintain a constitutionally acceptable public defense system, which permits excessive caseloads for individual public defenders, fails to provide adequate staffing, fails to provide training and supervision of attorneys, fails to enforce performance standards and ethical obligations, and permits inadequate and unstable funding sources for the provision of counsel to indigent defendants in the state. The alleged deficient policies and practices of the defendants give rise to all the claims of the proposed class. Moreover, the claims all arise from same legal theory: defendants' maintenance and furtherance of a systematically deficient public defender system, which violates plaintiffs' constitutional rights to counsel and equal protection under both the Louisiana and United States Constitutions. See DG, 594 F.3d at 1199 (typicality, like commonality, exists where "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances"). Despite the conclusion of the majority, I do not find that we must or should conduct an individualized analysis reserved for post-conviction relief procedure in this case. To require a Strickland analysis or limit any constitutional claim involving the assistance of counsel to post-conviction relief only is to disregard the fundamental right to counsel.

Therefore, I would not find error in the trial court's finding that plaintiffs satisfied the typicality requirement.

Adequacy

Pursuant to La. C.C.P. art. 591(A)(4), plaintiffs must establish that the class representatives chosen will fairly and adequately protect the interest of the class. The following factors are identified as those which "may be relevant" to the

adequacy inquiry: (1) the representative must be able to demonstrate that he or she suffered an actual as opposed to a hypothetical injury; (2) the representative should possess first-hand knowledge or experience of the conduct at issue in the litigation; (3) the representative's stake in the litigation should be significant enough, relative to that of other class members, to ensure that representative's conscientious participation in the litigation; and (4) the representative should not have interests seriously antagonistic to or in direct conflict with those of other class members. Baker, 14-2243 at p. 22, 167 So. 3d at 543-44.

The evidence shows that the plaintiffs have all been subjected to, and aggrieved by, the complained of policies and practices of the defendants giving rise to this suit, and all plaintiffs have an interest in the outcome. Moreover, there appears to be no evidence of conflicting or antagonistic claims among the plaintiffs and the members of the class. Plaintiffs all signed declarations, which indicated that they wanted to improve public defender services for all poor people accused of non-capital crimes in the state, and hoped that this lawsuit would ensure that people are not denied meaningful and effective representation simply because they are unable to afford the services of a lawyer. Plaintiffs further declared they are working closely with the attorneys in this lawsuit and are committed to continue doing so on behalf of other indigent defendants. Lastly, each of the plaintiffs affirmatively declared they seek only declaratory and injunctive relief for all current and future indigent defendants and do not seek money damages or the overturning of any charges or convictions against them or others in this case. The declarations set forth by plaintiffs were reiterated in their deposition testimony, and their commitment to assisting in the lawsuit, even if their individual criminal cases were completed, was assured.

I would find no error in the trial court's determination that plaintiffs' claims were typical of the class. The evidence provided showed that plaintiffs have first-

25

hand experience of the conduct at issue in the litigation, have a significant stake in the litigation to ensure their participation, and do not have interests seriously antagonistic to those of the other class members.

Requirements of La. C.C.P. art. 591(B) and (C)

In this case, the trial court determined that La. C.C.P. art. 591(B)(2) applied to the lawsuit and found that plaintiffs established that defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." In Robichaux v. State ex rel. Dep't of Health & Hosps., 06-0437 (La. App. 1st Cir. 12/28/06), 952 So. 2d 27, writs denied, 07-0567 (La. 6/22/07), 959 So. 2d 503, 07-0580 (La. 6/22/07), 959 So. 2d 504, 07-0583 (La. 6/22/07), 959 So. 2d 504, this court observed as follows:

> Article 591(B)(2) class actions, commonly thought of as "civil rights actions," are certified on a "non-opt out" basis in order to ensure the completeness of appropriate declaratory or injunctive relief concerning conduct by the defendant that may be either ordered or blocked. Lambert, *Certification of Class Actions*, 58 La. L.Rev. at 1100-01. *See Defraites v. State Farm Mut. Auto Ins. Co.*, 03-1081, p. 16 (La. App. 5 Cir. 1/27/04), 864 So. 2d 254, 262.

Robichaux, 06-0437 at p. 21, 952 So. 2d at 40. Noting that the claimants in Robichaux sought monetary damages, the court stated that "it is not the sort of 'purely' declaratory or injunctive relief claim best addressed by [La. C.C.P. art. 591(B)(2)]" and found that certification was not appropriate under this provision. Robichaux, 06-0437 at p. 21, 952 So. 2d at 41.

Plaintiffs in this case do not seek individualized relief and do not seek monetary damages; rather, they seek injunctive and declaratory relief in order to address and remedy the alleged deficient policies and practices of the defendants and systematic defects in the delivery of public defender services in the state. I would not find error in the trial court's determination that the class met the requirements of, and should be certified pursuant to, La. C.C.P. art. 591(B)(2).

Additionally, I would not find merit in defendants' contention that La. C.C.P. art. 591(C)'s prohibition of certification for the "purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class" prohibits the certification of the class in this case. The plaintiffs' claims, as pled, do not seek individualized, post-conviction relief pursuant to Strickland, 466 U.S. 668, 104 S. Ct. 2052.

In view of the evidence, issues, and arguments presented in this particular case raising serious constitutional violations arising from the actions and inactions of the Board, the State Public Defender, and the Governor, I would not find that the trial court abused its discretion in certifying a class action in this case and would affirm the judgment of the trial court.

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2019 CA 0125

## JOSEPH ALLEN, STEVEN AYRES, ASHLEY HURLBURT, RORY KEVIN GATES, JAMES HOWARD, DEMARCUS MORROW, RODNEY WALLER, KEITH ARCEMENT, FREDERICK BALL, GENARO CRUZ GOMEZ, SAM YBARRA, MICHAEL CARTER, & JAMES PARKER, ON BEHALF OF THEMSELVES & ALL OTHERS SIMILARLY SITUATED

## VERSUS

## JOHN BEL EDWARDS IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA, ZITA JACKSON ANDRUS, CHRIS L. BOWMAN, FLOZELL DANIELS, JR., THOMAS D. DAVENPORT, JR., PATRICK J. FANNING, W. ROSS FOOTE, KATHERINE E. GILMER, MICHAEL C. GINART, JR., FRANK HOLTHAUS, DONALD W. NORTH, & MOSES JUNIOR WILLIAMS, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE LOUISIANA PUBLIC DEFENDER BOARD, & JAMES T. DIXON, JR., IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE PUBLIC DEFENDER

**Theriot, J., concurring with reasons.**

I agree with the majority's reversal of the class certification due to lack of commonality. However, I would pretermit discussion on all other elements of class certification.

I write separately to express my views on the overriding controversy in this matter, which is the Louisiana Public Defenders Act of 2007 (LPDA). I have previously voted not to summarily dismiss this matter. I wanted plaintiffs to have the opportunity to argue justiciable issues regarding the LPDA. However, all of the inadequacies of the LPDA so thoroughly argued by the plaintiffs can be boiled down to one basic, yet complicated issue: lack of funding. All of the issues put forth by the plaintiffs' briefs are funding issues:

- Excessive caseloads and workloads

- Failure to comply with National and Louisiana Public Defender Board ("LPDB") standards
    - Failure to communicate with clients
    - Failure to investigate
    - Failure to file proper pre-trial motions
    - Failure to adequately research
- Lack of resources
- Lack of professional independence
- Lack of training and supervision

The "substandard" practices argument circle back to excessive workload. The workload is excessive because there are not enough funds to pay for additional attorneys, investigators, and support staff. An increase in funds would provide more resources, training, and supervision. Professional independence would be achieved with proper funds. Plaintiffs do not argue that the men and women employed by the various public defender offices throughout the state are incompetent. Plaintiffs argue that the funding mechanism of the LPDB creates excessive caseload, inadequate support staff and not enough investigators, conflicts of interest, lack of supervision, etc.

Plaintiffs seek judicial intervention to require the state of Louisiana and the Governor to override the LPDB and to impose what will amount to judicial oversight over the entire public defender system throughout the state. Moreover, the plaintiffs seek this relief *pre-conviction*. I question the justiciability of the claims, the appropriateness of the relief sought, and the necessity of certifying this matter as a class action.

It is the legislature --- where matters of public policy are openly debated and openly decided --- who decides the funding of governmental entities. The plaintiffs are asking the judiciary to intercede and provide what plaintiffs deem to be adequate

2

funding to LPDB. This is a course of action I decline to undertake without proof that all other avenues have been exhausted. Funding issues are a legislative function, and courts need to be leery of dictating funding priorities to the legislature.

I am not a member of the legislature. I am a member of an intermediate error-correcting court, not a policy-setting one. I believe that the reach of the judiciary should not exceed its grasp. The judiciary must refrain from assuming functions that the legislative and executive branches are best equipped and, as pointed out by C.J. Whipple in her concurrence, constitutionally required to undertake.

I do not take lightly the arguments of the plaintiffs. I agree that inadequate funding plagues public defender offices across this state. I have observed the men and women working for public defender offices throughout the state and they are competent, hardworking individuals doing an outstanding job with the resources available. I agree with Justice Weimer's statement in his concurring opinion in *State v. Covington* that "it may be time to re-visit *Peart*."[1] *State v. Covington*, 2020-00447 (La. 12/1/20), 2020WL7301278 at *6. However, as a member of an intermediate court, I must abide by current jurisprudence of the Louisiana Supreme Court. *Peart* still controls. Therefore, I concur with the majority and find the trial court erred when it granted the plaintiffs' motion for class certification.

---

[1] *State v. Peart*, 92-0907 (La. 1993), 621 So.2d 780.

3